Zenon H. PICO and Paula Pico, Individually and as Parents of Jose Antonio Pico, Deceased, Esperanza Moreno, as Next Friend of Tatiana Pico, a Minor and Heir to the Estate of Jose Antonio Pico, Deceased, and The Estate of Jose Antonio Pico, Deceased, Appellants,

v.

CAPRICCIO ITALIAN RESTAURANT, INC., Faisal Hussein, Individually, Jack Montalbano, Individually, The Jack and Mary Montalbano Trust, Angelina Montalbano Sulgrove Trust, Camilla Montalbano Brothers Trust, Mary Ann Montalbano Turnbow Trust, Margaret Montalbano Burke Trust and Jo Ann Montalbano Piper Trust, Appellees.

No. 14–04–01109–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Dec. 19, 2006.

Mark Lapidus, Houston, for appellants.

Armando Lopez, Bruce C. Gaible, Ruth Ellen Piller, Houston, for appellees.

Panel consists of Justices HUDSON, FROST, and SEYMORE.

## OPINION

CHARLES W. SEYMORE, Justice.

In this wrongful death suit based on a premises liability theory, appellants, Zenon H. Pico and Paula Pico, Individually and as Parents of Jose Antonio Pico, Deceased, Esperanza Moreno, as Next Friend of Tatiana Pico, a Minor and Heir to the Estate of Jose Antonio Pico, Deceased, and The Estate of Jose Antonio Pico (collectively "appellants") appeal from three separate summary judgments in favor of (1) Capriccio Italian Restaurant, Inc. ("Capriccio"); (2) Jack Montalbano, Individually, The Jack and Mary Montalbano Trust, Angelina Montalbano Sulgrove Trust, Camilla Montalbano Brothers Trust, Mary Ann Montalbano Turnbow Trust, Margaret Montalbano Burke Trust, and Jo Ann Montalbano Piper Trust (collectively "the Montalbanos"); and (3) Faisal Hussein, Individually, ("Hussein"). We affirm, in part, and reverse and remand, in part, the summary judgment in favor of Capriccio. We affirm, in part, and reverse and remand, in part, the summary judgment in favor of the Montalbanos. We affirm the summary judgment in favor of Hussein.

## I. Background

During relevant times, the Montalbanos owned property fronting Westheimer Street in Houston. The Montalbanos leased a portion of the property, the premises located at 7933 Westheimer, to Capriccio, which operated a nightclub ("the club"). Hussein was the president and sole shareholder of Capriccio. The leased premises consisted of the club building, a driveway just east of the building, and a parking lot behind the building. Hullsmith Street, which runs perpendicular to Westheimer, was the east border of the

Montalbanos' property. Between the club premises and Hullsmith was a strip center housing several businesses, who were also tenants of the Montalbanos, and a parking lot in front of the strip center. To the east of Hullsmith was a parking lot that was not owned or occupied by the Montalbanos or Capriccio.

On the night of May 4, 2001, Jose Antonio Pico ("Pico"), Jose Amaya, Alvaro Cifuentes, and Yianet Lara went to the club. They met in the parking lot east of Hullsmith and walked to the club. When they arrived, Pico went inside while Amaya, Cifuentes, and Lara remained outside. While Amaya was outside by the door, a Cadillac with six occupants appeared in the driveway. The driver asked Amaya, "What are you looking at?" The Cadillac occupants then made offensive statements to the driver of the car in front of them. After the front car moved, the Cadillac continued to the parking lot at the back of the club. Amaya called Pico and asked him to come out because Amaya, Cifuentes, and Lara planned to leave and Lara's handbag was in Pico's car.

The group arrived at Pico's car in the parking lot east of Hullsmith. Then, a friend named David Barrerra arrived at the club, parked in front of the entrance, and began walking towards them. At some point, the Cadillac appeared and struck Barrera, and one or more of the occupants got out of the car and tried to physically hit Barrera. After Pico went to Barrera's aid, the Cadillac occupants beat Pico for about twenty minutes. They eventually let Pico go, but one of the Cadillac passengers subsequently struck him again four times with a baseball bat. As we will discuss, the location of the assault on Pico is disputed and is central to the motions for summary judgment. In any event, Pico died four days later from his injuries.

Appellants, who are Pico's parents, the mother of his minor child, and his estate, filed a wrongful death suit against appellees based on a premises liability theory. Appellants alleged that all appellees were negligent by failing to take reasonable measures to ensure Pico's safety as a business invitee. Appellants also sought punitive damages, claiming appellees' actions constituted gross negligence and/or intentional acts.

Capriccio and Hussein jointly filed a traditional motion for summary judgment. The Montalbanos also filed a traditional motion for summary judgment. In essence, both motions were based on the contention that appellees owed no duty to protect Pico from the criminal acts of the Cadillac occupants because the appellees did not control or have the right to control the premises where Pico was assaulted. Before the trial court ruled on the traditional motions, Hussein filed his own "no-evidence" motion for summary judgment. Subsequently, the trial court signed a traditional summary judgment in favor of Capriccio, a traditional summary judgment in favor of the Montalbanos, and a "no-evidence" summary judgment in favor of Hussein. Appellants appeal from all three orders.

## II. THE ISSUES AND STANDARD OF REVIEW

Appellants present two issues on appeal: (1) the trial court erred by granting summary judgment on behalf of the "Appellees/Defendants" because there are genuine issues of material fact regarding the location of the assault; and (2) the trial court erred by granting a no-evidence summary judgment. We construe appellants' first issue as a challenge to the traditional summary judgments in favor of Capriccio and the Montalbanos and their second issue as a challenge to the no-

evidence summary judgment in favor of Hussein.

The movant for a traditional summary judgment must show there are no genuine issues of material fact and it is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Western Invs., Inc. v. Urena,* 162 S.W.3d 547, 550 (Tex.2005). A defendant, as movant, is entitled to summary judgment if it (1) disproves at least one element of the plaintiff's theory of recovery; or (2) pleads and conclusively establishes each essential element of an affirmative defense, thereby rebutting the plaintiff's cause of action. *Am. Tobacco Co. v. Grinnell,* 951 S.W.2d 420, 425 (Tex. 1997).

A party may move for summary judgment on the ground there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. TEX.R. CIV. P. 166a(i); *Urena,* 162 S.W.3d at 550. The court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact on those elements. TEX.R. CIV. P. 166a(i); *Sudan v. Sudan,* 199 S.W.3d 291, 292 (Tex.2006); *Urena,* 162 S.W.3d at 550.

When a trial court's order does not specify the grounds relied upon in granting summary judgment, we must affirm the summary judgment if any of the grounds presented are meritorious. *See Urena,* 162 S.W.3d at 550. In reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and indulge every reasonable inference and resolve any doubts in favor of the nonmovant. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex.2005). Although appellants make one argument addressing all three summary judgments, we will address each one separately.

### III. Traditional Summary Judgment In Favor Of Capriccio

Capriccio filed a traditional motion for summary judgment on appellants' negligence cause of action and claim for punitive damages.

### A. Negligence Cause of Action

■ Capriccio moved for summary judgment on appellants' negligence cause of action on the sole ground that it owed no duty to protect Pico from the criminal acts of the Cadillac occupants because Capriccio did not control or have the right to control the premises where Pico was assaulted.[1] Because a premises liability case is grounded in negligence, the threshold inquiry is whether the defendant owes a legal duty to the plaintiff. *See Centeq Realty, Inc. v. Siegler,* 899 S.W.2d 195, 196–97 (Tex.1995). In general, a person has no legal duty to protect another from the criminal acts of third persons. *Timberwalk Apartments, Partners, Inc. v. Cain,* 972 S.W.2d 749, 756 (Tex.1998); *Walker v. Harris,* 924 S.W.2d 375, 377 (Tex.1996). However, " '[o]ne who controls . . . premises does have a duty to use ordinary care to protect invitees from criminal acts of third parties if he knows or has reason to know of an unreasonable and foreseeable risk of harm to the invitee.' " *Timberwalk,* 972 S.W.2d at 756 (quoting *Lefmark Mgmt. v. Old,* 946 S.W.2d 52, 53 (Tex.1997)). Whether a duty exists is a question of law for the court to decide from the facts surrounding the occurrence at issue. *Centeq,* 899 S.W.2d at 197.

■ Capriccio specifically asserted in its motion that Pico was assaulted on Hullsmith—a public street and/or in the parking lot east of Hullsmith, and it did not control or have a right to control either location.[2] Capriccio suggested the initial confrontation between Pico's friends and the Cadillac occupants in front of the club did not impose a duty on Capriccio to protect Pico from subsequent criminal conduct occurring on premises it did not control or have a right to control. *See Gonzalez v. South Dallas Club,* 951 S.W.2d 72, 73–76 (Tex. App.-Corpus Christi 1997, no writ) (holding altercation at defendant's night club between plaintiff's group of friends and

---

1. In the "Facts" section of its motion, Capriccio stated that it "move[s] for summary judgment based on [its] affirmative defenses contained in [its] Original Answer . . . and on the fact that [appellants] cannot prove each element of their cause of action as a matter of law." Thereafter, Capriccio did not address its affirmative defenses again, other than reciting the standard applicable to a motion for summary judgment based on affirmative defenses. The argument that followed was directed solely to Capriccio's contention that it owed no duty to Pico. Therefore, we conclude the single statement in the "Facts" section regarding the affirmative defenses, without more, is not an express statement of a summary judgment ground. *See* Tex.R. Civ. P. 166a(c) (providing that motion for summary judgment "shall state the specific grounds therefor"); *Murphy v. McDaniel,* No. 05–01–00516–CV, 2002 WL 980850, at *4 (Tex.App.-Dallas May 14, 2002, pet. denied) (not designated for publication) (holding defendant's merely stating elements of plaintiff's statutory-fraud claim and asserting entitlement to summary judgment was not a statement of a summary judgment ground). In fact, on appeal, Capriccio characterizes its no-duty argument as its only summary judgment ground on the negligence claim. Thus, we will consider this ground only.

2. In the "Facts" section of its motion, Capriccio specifically asserted the assault occurred at 7917 Westheimer—the parking lot east of Hullsmith. However, in the "argument" portion of the motion, Capriccio asserted Pico was "injured" on a public street. In its brief, Capriccio suggests the assault occurred both in the street and in the parking lot east of Hullsmith. In any event, Capriccio asserted in its motion that it did not control or have a right to control either location.

another group did not impose duty on defendant to protect plaintiff from vehicular assault by member of the other group occurring minutes after she left the club in public intersection that defendant did not control or have right to control). In contrast, appellants contend there is a genuine issue of material fact relative to the location of the assault. We agree. We conclude that Capriccio's summary judgment evidence did not conclusively demonstrate the entire assault occurred in the street and/or in the parking lot east of Hullsmith. Nonetheless, appellants presented contrary evidence negating that the assault occurred entirely in one or both of these locations.[3]

### Capriccio's Summary Judgment Evidence

To support its motion for summary judgment, Capriccio attached (1) records from the Harris County Medical Examiner's Office, (2) excerpts from Jose Amaya's deposition, (3) excerpts from Alvaro Cifuentes's deposition, (4) and Hussein's affidavit.

The medical examiner's records include a police report listing information about the offense input via computer. At the beginning of the report is an entry: "Location: Street no—007917 Name—WESTHEIMER." Later, the report includes a supplement with a substantially similar entry. According to Capriccio, this report shows the assault on Pico occurred at 7917 Westheimer—which undisputedly is the parking lot east of Hullsmith. In his affidavit, Hussein averred that neither he nor Capriccio owned or controlled the property at 7917 Westheimer, and the property leased by Capriccio is 7933 Westheimer. In contrast, appellants argue that these entries merely show where the injured Pico was found by the police. We do not conclude that these entries depict or describe only where Pico was found. However, we do agree that these imprecise entries do not establish that the entire assault occurred in the parking lot east of Hullsmith.

Amaya's deposition testimony is the only evidence presented by Capriccio actually describing the assault on Pico.[4] Amaya testified that, after leaving the club, the group walked to the parking lot east of Hullsmith.[5] Then, David Barrerra[6] arrived at the club, parked in front of the entrance, and walked towards them. As he walked towards them, the individuals in the Cadillac were "coming out, and they ran over him." Amaya later clarified that the Cadillac struck Barrerra as it drove on Hullsmith. The driver then exited the Cadillac and tried to hit Barrera with his hands. When asked whether this fight

---

**3.** Although appellants' brief is not clear, they initially seem to argue that the evidence raises a genuine issue of material fact relative to the location of the assault. However, they then devote considerable time to suggesting reasons Capriccio owed Pico a duty even if the assault occurred on premises it did not control or have a right to control. For instance, they suggest Capriccio had a duty to prevent the initial confrontation in front of the club from "escalating" into violence off the club premises. They also allege Capriccio had an "assumed duty" to protect Pico in the parking lot east of Hullsmith because Capriccio knew its customers parked there. Because Capriccio failed to establish the assault occurred on premises it did not control or have a right to control, we need not address appellants' alternate theories.

**4.** Cifuentes's deposition excerpts contained no details about the assault.

**5.** Amaya actually could not recall the name of this street, but it is undisputed they parked in the lot east of Hullsmith.

**6.** Although Amaya referred to David Barrera as "LA," it is undisputed "LA" is David Barrera.

occurred in the street, Amaya responded, "Yes. At the corner of that street and the establishment," although his testimony attached to Capriccio's motion did not indicate which "establishment" or which corner. Pico ran towards the car to try to defend Barrera. When Pico "arrived," Barrera stood up and "ran towards [the club] walking." Then, the Cadillac occupants hit Pico for about twenty minutes.

After watching this incident, Amaya walked towards Pico. One of the Cadillac passengers got out and asked, "What do you want?" Amaya said to leave his friend alone. Amaya retreated, but the passenger followed him holding a baseball bat and tried unsuccessfully to strike him. At some point, Pico was turned loose by the Cadillac occupants, but this passenger wielding the bat subsequently struck Pico again four times with the bat. Amaya's testimony is difficult to understand, but he indicated that Pico was next to his own car, which was parked in the lot east of Hullsmith, when he was struck with the bat.[7]

In sum, Amaya testified that Pico was initially assaulted for twenty minutes after he went to Barrera's aid. Then, after Pico retreated, he was assaulted again with a baseball bat. Although Amaya's testimony indicated the subsequent assault with the bat occurred in the parking lot east of Hullsmith, Amaya's testimony did not demonstrate where the initial, twenty-minute assault occurred. The most we can ascertain is that Barrera was attacked in the street, Pico ran to defend Barrera, and the assault on Pico began after he "ar-

rived" to defend Barrera. However, Amaya did not specify precisely where the assault on Pico began. Regardless, even if the assault on Pico began in the street, Amaya's testimony is silent regarding Pico's location during the rest of the twenty-minute assault.

Because we indulge every reasonable inference and resolve any doubts in favor of appellants-not Capriccio, we cannot infer that an assault lasting a full twenty minutes was confined to the street merely because it began in the street. It is just as plausible the assault spilled over onto property bordering the street, including the property west of Hullsmith where the club and the strip center are located. Although the location of the assault was fundamental to Capriccio's motion, it did not elicit testimony from Amaya to pin down the location, or at least it did not attach any such testimony to its motion. Accordingly, Capriccio did not conclusively demonstrate that the entire assault occurred in the street and/or in the parking lot east of Hullsmith.

### Appellants Summary Judgment Evidence

Because Capriccio did not conclusively demonstrate that the entire assault occurred in the street and/or in the parking lot east of Hullsmith as claimed in its motion, the burden never shifted to appellants to raise a genuine issue of material fact regarding the location of the assault. *See Lundstrom v. United Servs. Auto. Ass'n.-CIC,* 192 S.W.3d 78, 84 (Tex.App.-Houston [14th Dist.] 2006, pet. denied).

---

7. Specifically, Amaya testified, "And when he produced the bat, he swung twice at me. He wasn't able to hit me. We were here like next to [Pico's] car, because when he produced the bat I ran toward the sidewalk to the corner. And his friends left [Pico]. They let him loose. They all got in the car. When the guy was not able to reach me—catch up with me, he walked towards where his friends were. At that time [Pico] was at his car, to one side of the car. I told [Pico] to get in the car because he was in the middle. He hadn't—I hadn't reached to where [Pico] was at that time. When he got to where [Pico] was, he hit him many times, like four times."

Nonetheless, appellants did present contrary evidence in their summary judgment response, particularly Barrera's affidavit.[8]

Barrera averred that, when he "pulled up" to the club, he learned Pico was in the parking lot on the east side of Hullsmith. Barrera parked his car and walked towards Hullsmith. He described what happened:

Before I reached Hullsmith Street, a car full of people pulled up and several of the occupants of the vehicle got out and began starting trouble with me. At the time this occurred, I was in the parking lot between [the club] and Hullsmith Street, in front of a strip center on the west side of Hullsmith Street. This is an area where people who go to [the club] park. Other individuals got out of the car and began assaulting Mr. Pico. I was able to run away, but Pico was not. The assault on me occurred in the parking lot between Hullsmith and [the club] on the west side of Hullsmith.

■ Preliminarily, we note Capriccio objected to two of Barrera's statements that are pertinent to our disposition and reurges these objections on appeal: (1) "Before I reached Hullsmith Street, a car full of people pulled up and several of the occupants of the vehicle got out and began starting trouble with me." Capriccio contends this statement is hearsay, speculative, and conclusory; and (2) "The assault on me occurred in the parking lot between Hullsmith and [the club] on the west side of Hullsmith." Capriccio contends this statement is hearsay and conclusory.[9]

The record does not reflect a ruling by the trial court on Capriccio's objections. Because the objections to hearsay and speculation are objections to form, Capriccio waived them by failing to obtain a ruling. *See McMahan v. Greenwood,* 108 S.W.3d 467, 498 (Tex.App.-Houston [14th Dist.] 2003, pet. denied); *Hou–Tex v. Landmark Graphics,* 26 S.W.3d 103, 112 (Tex.App.-Houston [14th Dist.] 2000, no pet.). Conversely, because Capriccio's objections that the statements are conclusory are objections to substantive defects, Capriccio did not waive them by failing to obtain a ruling and may raise them on appeal. *See McMahan,* 108 S.W.3d at 498; *Hou–Tex,* 26 S.W.3d at 112.

■ Capriccio claims the statements were conclusory because Barrera did not define or describe what he meant by "the occupants ... began starting *trouble* with me" or "[t]he *assault* on me occurred ..." We disagree. These statements are not conclusions; rather, Barrera merely recited facts and described events based on his personal knowledge. *See Hou–Tex,* 26 S.W.3d at 112 (recognizing conclusory statement is one that does not provide the underlying facts to support the conclusion). The more appropriate objection may have been that these statements are vague. However, Barrera's statements were not conclusory simply because he used terms that are somewhat vague to recite facts based on his personal knowledge. Moreover, although these terms were somewhat vague, Amaya testified that at least the Cadillac driver got out and hit Barrera. Therefore, we can reasonably infer that

<hr/>

8. Out of appellants' evidence, only Barrera's affidavit contained further information relative to the location of the assault on Pico. Although appellants attached more excerpts from Amaya's deposition than were attached to Capriccio's motion, the additional excerpts were not relative to the location of the assault.

9. Capriccio made numerous objections to appellants' summary judgment evidence. We will address only the above-cited objections to Barrera's affidavit because it was the only additional evidence presented by appellants pertinent to the location of the assault.

this is the incident to which Barrera referred.[10]

■ Contrary to Amaya's testimony that Barrera was attacked in the street, Barrera stated he was assaulted in the parking lot in front of the strip center west of Hullsmith—before he reached the street. Barrera did not state where Pico was assaulted. However, Amaya testified the assault on Pico began after he "arrived" to help Barrera. Because we *do* indulge every reasonable inference and resolve any doubts in favor of appellants, Barrera's affidavit, in conjunction with Amaya's testimony, was some evidence a portion of the assault on Pico occurred in the parking lot in front of the strip center west of Hullsmith. Although Barrera did not indicate where the entire assault on Pico occurred, he at least controverted Capriccio's claim that the entire assault occurred in the street and/or the parking lot east of Hullsmith. Consequently, Capriccio failed to conclusively prove the assault occurred on premises it did not control or have a right to control. Accordingly, the trial court erred by granting summary judgment in Capriccio's favor on appellants' negligence claim on the sole ground raised in its motion.[11]

### B. Claim for Punitive Damages

Capriccio moved for summary judgment on appellants' claim for punitive damages on two grounds: (1) punitive damages are precluded by section 41.005 of the Texas Civil Practices and Remedies Code; *see* TEX. CIV. PRAC. & REM.CODE ANN. 41.005(a),

(b) (Vernon 1997) (providing, "In an action arising from harm resulting from an assault, theft, or other criminal act, a court may not award exemplary damages against a defendant because of the criminal act of another" and setting forth certain exceptions); and (2) parents of a deceased allegedly have no claim for punitive damages under the wrongful death act.

On appeal, appellants do not challenge the summary judgment on their claim for punitive damages against Capriccio. Thus, appellants have waived any error with respect to the summary judgment on that claim. *See Jacobs v. Satterwhite*, 65 S.W.3d 653, 655–56 (Tex.2001) (holding court of appeals erred in reversing summary judgment on particular claim when appellants did not challenge summary judgment on that claim); *Riston v. Doe*, 161 S.W.3d 525, 527 n. 4 (Tex.App.-Houston [14th Dist.] 2004, pet. denied) (refusing to consider summary judgment on particular claim when appellant did not challenge summary judgment on that claim).

### IV. TRADITIONAL SUMMARY JUDGMENT IN FAVOR OF THE MONTALBANOS

The Montalbanos moved for summary judgment on appellants' negligence cause of action and claim for punitive damages.

### A. Negligence Cause of Action

■ The Montalbanos moved for summary judgment on appellants' negligence cause of action on two grounds: (1) they owed no duty to protect Pico from the criminal acts of the Cadillac occupants be-

---

10. Curiously, Barrera did not mention the Cadillac striking him as described by Amaya. However, he at least referred to the incident in which one or more of the Cadillac occupants exited the car and hit him.

11. On appeal, Capriccio also contends it owed no duty to Pico because the risk of harm was not foreseeable, but Capriccio did

not move for summary judgment on this ground, so we will not consider it. *See Lewis v. Nolan*, 105 S.W.3d 185, 189–90 (Tex.App.-Houston [14th Dist.] 2003, pet. denied) (recognizing we may not affirm summary judgment on a ground not raised in the motion).

cause he was assaulted off the Montalbanos' premises; and (2) even if the initial confrontation in front of the club triggered a duty to protect Pico from the subsequent criminal conduct occurring off the Montalbanos' premises, they did not owe any such duty because Capriccio—not the Montalbanos—controlled or had a right to control security on the club premises. Thus, although the Montalbanos raised two grounds, both depend on the proposition that Pico was assaulted off the Montalbanos' premises.

Specifically, the Montalbanos asserted in their motion that Pico was assaulted on Hullsmith-a public street. We conclude that their summary judgment evidence did not conclusively demonstrate the assault occurred entirely in the street. Nevertheless, appellants' evidence negated that the assault occurred entirely in the street.[12]

To support their motion, the Montalbanos relied on the following evidence: (1) excerpts from Amaya's deposition; (2) excerpts from Cifuentes's deposition; (3) and the lease. Only Amaya's deposition included information relative to the location of the assault on Pico.[13] The Montalbanos relied on the same pertinent excerpts of Amaya's deposition relative to the location of the assault that Capriccio relied on.[14] As we have explained, these excerpts did not show Pico was assaulted entirely in the street.

 Moreover, in response to the Montalbanos' motion, appellants presented Barrera's affidavit, which is some evidence that at least a portion of the assault on Pico occurred in the parking lot in front of the strip center west of Hullsmith. Thus, Barrera not only controverted the Montalbanos' claim that the assault on Pico occurred entirely in the street, but he raised the possibility that some portion occurred on property owed by the Montalbanos. Consequently, the Montalbanos did not conclusively establish the assault occurred off their premises. Accordingly, the trial court erred by granting summary judgment in their favor on appellants' negligence claim on the two grounds raised in their motion.[15]

## B. Claim for Punitive Damages

The Montalbanos moved for summary judgment on appellants' claim for punitive

12. As they did with Capriccio, appellants suggest the same reasons the Montalbanos owed a duty to protect Pico even if the assault occurred off their premises. Because the Montalbanos did not prove the assault occurred off their premises, we need not consider appellants' alternate theories.

13. In the excerpts of Cifuentes's deposition attached to the Montalbanos' motion, he did not describe the assault on Pico. The Montalbanos attached the lease in an effort to show that Capriccio controlled or had the right to control security on the club premises.

14. The Montalbanos attached fewer excerpts of Amaya's deposition to their motion than were attached to Capriccio's motion. However, the Montalbanos referred to additional excerpts not attached to their motion, but attached to Capriccio's motion.

15. On appeal, the Montalbanos contend for the first time they owed no duty to Pico even if the assault occurred *on* their premises because the lease gave Capriccio control of the leased premises, including the building, driveway, and parking lot. However, in their brief and their motion, the Montalbanos did not address the possibility, as raised by appellants' evidence, that a portion of the assault occurred in the parking lot of the strip center west of Hullsmith, which is property owned by the Montalbanos and not the same parking lot that comprised part of Capriccio's leased premises. Finally, the Montalbanos also assert on appeal that they owed no duty to Pico even if the assault occurred on their premises because the risk of harm was not foreseeable, but they did not raise this ground in their motion, so we will not consider it. *See Lewis,* 105 S.W.3d at 189–90.

damages on the same two grounds as Capriccio: (1) punitive damages are precluded by Texas Civil Practices and Remedies Code section 41.005; and (2) parents of the deceased allegedly have no cause of action for punitive damages under the wrongful death act. On appeal, appellants do not challenge the summary judgment in favor of the Montalbanos on the punitive damages claim. Thus, they have waived any error with respect to the summary judgment on that claim. *See Jacobs,* 65 S.W.3d at 655–56; *Riston,* 161 S.W.3d at 527 n. 4.

## V. No-Evidence Summary Judgment In Favor Of Hussein

 Hussein filed a no-evidence motion for summary judgment on all claims against him, asserting that appellants cannot provide any evidence on each element of their negligence claim: duty; breach of duty; causation; and damages. *See Doe v. Boys Clubs of Greater Dallas, Inc.,* 907 S.W.2d 472, 477 (Tex.1995) (setting forth elements of a negligence claim). In their stated appellate issue challenging the no-evidence summary judgment, appellants contend they presented evidence to support each element of their claim against Hussein.

 However, in their response to Hussein's no-evidence motion and in their brief, appellants failed to argue, or point to any evidence, supporting their contention that Hussein owed a duty to Pico. It is undisputed that Capriccio is a corporation and Hussein is its president and sole shareholder. Unless alter ego is established, a corporate officer or agent may be individually liable to others for his own negligence within the employment context only when he owes an independent duty of reasonable care to the injured party apart from the employer's duty. *Leitch v. Hornsby,* 935 S.W.2d 114, 117 (Tex.1996); *see Tri v. J.T.T.,* 162 S.W.3d 552, 562 (Tex.2005); *see also Palmer v. Wal–Mart Stores, Inc.,* 65 F.Supp.2d 564, 567 (S.D.Tex.1999) (applying *Leitch* and concluding manager of a Wal–Mart store could not be individually liable to customer alleging negligence/premises liability in slip-and-fall case absent allegation that manager breached an independent duty).

In their summary judgment response and in their brief, appellants do not argue, or point out any evidence showing, that Hussein was an alter ego of Capriccio or owed Pico any independent duty apart from the duty allegedly owed by Capriccio to ensure Pico's safety. Instead, in their response and in their one argument of their brief addressing all the summary judgments, appellants consistently referred to Capriccio and Hussein collectively as "The Capriccio Appellees/Defendants," when arguing reasons that they allegedly owed a duty to Pico.[16] Although a respondent to a no-evidence motion is not required to marshal its proof, it needs to point out in its response evidence raising a fact issue on the challenged elements. *See Johnson v. Brewer & Pritchard, P.C.,* 73 S.W.3d 193, 207 (Tex.2002) (citing comment to Rule 166a(i)). Because appellants failed to point out evidence raising a fact issue with respect to Hussein on the duty element, the trial court properly granted the no-evidence summary judgment in his favor on the negligence claim.

---

**16.** In response to Hussein's no-evidence motion, appellants incorrectly stated that Capriccio and Hussein previously filed a no-evidence motion; thus, appellants adopted their previous response as their response to the latest no-evidence motion. However, Capriccio and Hussein previously filed a traditional motion; therefore, appellants had not previously responded to a no-evidence motion. In their previous response, appellant argued regarding existence of a duty with respect to Capriccio and Hussein collectively. Therefore, by simply incorporating their previous response into their response to Hussein's later no-evidence motion, they failed to address Hussein individually.

Finally, Hussein's no-evidence motion did not directly refer to appellants' claim for punitive damages. However, he requested summary judgment on all claims against him because there is no evidence on each element of the negligence claim. A party generally may not recover punitive damages absent recovery of actual damages. *See Lions Eye Bank of Tex. v. Perry*, 56 S.W.3d 872, 878 (Tex.App.-Houston [14th Dist.] 2001, pet. denied) (citing *Twin City Fire Ins. Co. v. Davis*, 904 S.W.2d 663, 665 (Tex.1995); *Doubleday & Co., Inc. v. Rogers*, 674 S.W.2d 751, 753–54 (Tex.1984)). Therefore, Hussein's motion necessarily encompassed the claim for punitive damages, and the trial court properly granted summary judgment on that claim. Further, appellants do not challenge the summary judgment in favor of Hussein on their claim for punitive damages and thus have waived any error.

## VI. CONCLUSION

We sustain, in part, and overrule in part, appellants' first issue. We reverse the summary judgment in favor of Capriccio on appellants' negligence cause of action and remand for further proceedings consistent with this opinion. We affirm the summary judgment in favor of Capriccio on appellants' claim for punitive damages.

We reverse the summary judgment in favor of the Montalbanos on appellants' negligence cause of action and remand for further proceedings consistent with this opinion. We affirm the summary judgment in favor of the Montalbanos on appellants' claim for punitive damages.

We overrule appellants' second issue and affirm the summary judgment in favor of Hussein.