Affirmed and Memorandum Opinion
filed July 27, 2010.

 

In
The

Fourteenth
Court of Appeals



NO. 14-09-00311-CV



Julia Banda, Appellant 

v.

Houston Title
Company, Appellee 



On Appeal from
the 215th District Court

Harris County, Texas

Trial Court
Cause No. 2007-51448A



 

MEMORANDUM OPINION 

Julia Banda appeals from the trial court’s order
granting no-evidence summary judgment in favor of Houston Title Company. 
Because the dispositive issues are clearly settled in law, we issue this
memorandum opinion and affirm.  See Tex. R. App. P. 47.4.

I.   Background

Banda was the fee-simple owner of a homestead
property located in Houston, Texas that she inherited from her mother.  In July
2003, she contracted with Luis Hinojosa of EZ Mortgage Brokers to refinance her
home and transfer title to the property into her own name.  Banda paid Hinojosa
a total of $2,300 to prepare documents and assist her in refinancing her home. 
Hinojosa advised Banda she had been approved for refinancing; the closing was
scheduled for September 2003.  Because Banda did not speak English, Hinojosa
told her he would accompany her and serve as translator at the loan closing.

At the closing, rather than refinancing her property,
Banda alleged that she unknowingly conveyed her home to Aaron Keys by executing
a warranty deed to him.  First Franklin Financial Corporation (“First
Franklin”) funded Keys’s mortgage on the property, thus acquiring a security
interest in the home.  The September 2003 closing was held at the offices of
Houston Title Company (“HTC”).  HTC prepared the documents for the closing,
including a HUD-1 Settlement Statement, which Banda signed.  At the closing, funds
were dispersed to various entities, including Medallion Mortgage.  Banda
received a check for $15,407, which she was told was payment for the equity in
her property.

After the closing, Banda’s sister asked to see the
closing documents.  Banda informed her sister she was not given any closing
documents; her sister, suspecting Banda’s home had been sold rather than
refinanced, suggested Banda return the check to HTC.  HTC refused to accept the
check and rescind the contract although the closing documents had not yet been
notarized.  When Banda informed Keys about the “fraudulent transfer,” he
contacted HTC and requested cancellation of the sale.  Nevertheless, HTC refused
to rescind the sale.  Keys re-conveyed the property to Banda on October 9,
2003.  This deed was filed on November 11, 2003 in the Harris County Real
Property Records.

Banda remained in the home and attempted to make
mortgage payments to First Franklin, but her payments were rejected.  In May
2006,[1]
without notice to Banda, First Franklin foreclosed on the property.  First
Franklin purchased the property at the foreclosure sale and obtained a judgment
against Keys for possession of the property.  In July 2007, Banda was notified
that Keys had been ordered to vacate the property.  She contacted First
Franklin to complain about the “error or mistake” in the order to vacate; First
Franklin did not respond to Banda’s complaint.  On July 30, 2007, First Franklin
dispossessed Banda of her property by locking her out of the home and removing
her property.

On August 27, 2007, Banda filed suit against First
Franklin, Hinojosa, Keys, HTC, and numerous other individuals and entities. 
She described the “fraudulent scheme” of the defendants in her live pleading as
follows:

The fraudulent scheme involved in the transaction made the
basis of this suit is simple [but] difficult to detect:  (a) There must be a
property and an owner in real or perceived distress such as Julia Banda.  (b)
The owner must be naive and not fully informed about the real estate market. 
(c) There must be a straw buyer, such as Aaron Keys, who will either be
part of the scheme or equally a victim just as the Seller.  (d) The Seller’s
agent[,] as Mr. Hinojosa was, must keep the seller completely unaware of the
scheme. The Seller will only know of the scheme after it is over.  (e) The
fraudsters must have a closer (escrow officer) such as Heidi Andrews with
Houston Title Company, willing to participate in the scheme, since the Seller’s
agent chooses a complicit title company to close the loan.  (f) The escrow
officer will complete the transaction and quickly disburse the funds and claim
that the deal is final and cannot be cancelled.  (g) A mortgage brokerage
company (in this instance, Medallion Mortgage) faxes an invoice to the title
company either in form of a bogus purchase money loan, or for unsubstantiated
repairs done on the house.  (Either way, the payoff must appear on the title
commitment. If the payoff amount does not appear on the title commitment, there
must be further proof that such amount is owed.)  (h) After the transaction is
completed, the Title Company gains, the phantom mortgage brokerage company
gains, the buyer’s and seller’s agents gain, and the naive seller is
dispossessed of her property.  (i) The Seller has no recourse because she is
paid “something.”  (j) The Seller realizes late that she had been duped.  The
whole scheme here was to pay Medallion Mortgage the $16,550.  All the parties,
including the buyer, get a piece of the $16,550.  In most cases the Seller is
just happy to get any amount at closing and is therefore completely ignorant of
the fraudulent scheme.  The scheme did not work quite cleanly this time because
Ms. Banda became aware of the scheme before it was too late.

As is relevant here, Banda alleged the following
claims against HTC: civil conspiracy, common law and statutory fraud, breach of
fiduciary duty, and intentional infliction of emotional distress.  She sought
actual and exemplary damages.  

In July 2008, HTC filed a summary-judgment motion
alleging Banda had no evidence of one or more elements of each of her claims. 
Banda filed a response, including the signed earnest-money contract and the
HUD-1 Settlement Statement.  The following statements appear above Banda’s
signature on the Settlement Statement:

I have carefully reviewed the HUD-1 Settlement Statement
and to the best of my knowledge and belief, it is a true and accurate statement
of all receipts and disbursements made on my account or by me in this
transaction.  I further certify that I have received a copy of the HUD-1
Settlement Statement. . . .

(emphasis added).  The
Settlement Statement includes, among other things, a line item entitled “payoff”
charged against Banda’s funds at settlement to “Medallion Mortgage” for $16,550.
 Banda provided a copy of an invoice billed to her from Medallion Mortgage for
a “payoff” in the amount of $16,550.  

Banda also attached several documents marked as “draft
copies” and entitled “Schedule A,” “Schedule B,” and “Schedule C.”  She
included a fax cover sheet from Kevin Miller at ATG Mortgage to HTC, which contains
the following handwritten note: “Kristina, Here is the personal loan #’s. 
Please fax me the HUD 1 statement ASAP.  Thx, Kevin.”  Banda also included
several of HTC’s responses to its requests for production and a copy of the
unanswered interrogatories she had allegedly submitted to HTC, as well as a
copy of the writ of possession issued to First Franklin in its suit against
Keys.  Finally, Banda attached an affidavit to her response, in which she averred:

The Defendants conspired to sell my home when I intended to
refinance.  Houston Title Company closed on my home without my permission.  I
did not intend to have Mr. Kevin Miller and ATG Mortgage as the escrow agents
for the sale of my property.  I was not informed properly of what I was signing
during the closing because my agent, Luis Hinojosa and the closer Heidi Andrews
tricked me and never informed me of what I was signing.  I do not speak
English.  I do not understand English, unless words that are similar to Spanish
[sic].

Kevin Miller claims that the $16,550 was some “personal
loan.”  The only problem is that I do not know a Kevin Miller or a Medallion
Mortgage.  I have never met Kevin Miller nor have I ever known anyone by the
name of Kevin Miller.  Yet his name appeared on the HUD as someone that gave me
a personal loan.  These people conspired against me and ripped me off big time.

I never saw the page that had the “payoff” to Medallion
Mortgage.  Heidi Andrews and Luis Hinojosa hid the page from me.

As soon as my sister informed me that my home was sold
rather than refinanced, I went to Houston Title Company office and demanded
that the closing and disbursement be cancelled.  HTC refused to allow me into
their building.  I called the buyer, Defendant Keys and told him that I did not
intend to sell my house to him. He went to HTC and stated he wanted the deal
cancelled.  HTC refused and stated that the deal was final.

Defendant Aaron Keys decided to transfer my house back to
me and told me to send mortgage payments to Defendant First Franklin Financial
Corporation.  I was sending the payments.  First Franklin sent the payments
back and decided to evict me instead.

Due to the failure to rescind the contract, I was evicted
from my home by First Franklin.  I lost my house, my personal belongings, my
kid’s personal belongings, my deceased mother’s properties etc.  I was
devastated.  I was homeless with no income.

For Houston Title Company to claim that it did not do
anything wrong regarding the whole transaction that subsequently displaced me
from my home is an attempt to avoid responsibilities for its fraudulent
actions.  I lost personal items worth $169,000. . . .[[2]]

On February 17, 2009, the trial court granted HTC’s
no-evidence motion for summary judgment and entered a take-nothing judgment in its
favor.  In March 2009, on HTC’s motion, the trial court severed Banda’s claims
against HTC, making the summary judgment final.  After Banda’s motion for new
trial was denied, this appeal timely ensued.

II.   Analysis

            In five issues,
Banda contends the trial court erred in granting HTC’s no-evidence motion for
summary judgment because she produced probative evidence raising genuine issues
of material fact for her claims of civil conspiracy, common law and statutory
fraud, breach of fiduciary duty, and intentional infliction of emotional
distress. As discussed below, we conclude that the trial court properly granted
summary judgment in favor of HTC.

A.  
Standard of Review

After adequate time for discovery, a party may move for summary judgment on the ground that there is no evidence of one or more
essential elements of a claim or defense on which an adverse party would have
the burden of proof at trial.  Tex. R. Civ. P.
166a(i); W. Invs., Inc. v. Urena, 162 S.W.3d 547, 550 (Tex. 2005); Pico v. Capriccio Italian Rest., 209 S.W.3d 902, 905 (Tex. App.—Houston
[14th Dist.] 2006, no pet.).  The movant must identify the elements on which
there is no evidence.  Tex. R. Civ. P. 166a(i). 
Unless the respondent produces summary-judgment evidence raising a genuine
issue of material fact, the trial court must grant the motion.  Id.; Urena,
162 S.W.3d at 550; Pico, 209 S.W.3d at 905.  To defeat a no-evidence motion for summary judgment, the non-movant need not marshal her
evidence, but must point out in her response evidence raising a genuine issue
of fact as to the challenged elements.  See Tex. R. Civ. P. 166a(i) cmt. 1997; Johnson v.
Brewer & Pritchard, P.C., 73 S.W.3d 193, 207 (Tex. 2002); Pico,
209 S.W.3d at 912; San Saba Energy, L.P. v. Crawford, 171 S.W.3d 323,
330 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

B.  
Conspiracy

            In her first
issue, Banda asserts she produced evidence raising a genuine issue of material
fact on her civil conspiracy claim.  The elements of civil conspiracy include:
(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the
minds on the object or course of action; (4) one or more unlawful, overt acts;
and (5) damages as the proximate result.  Tri v. J.T.T., 162 S.W.3d 552,
556 (Tex. 2005).  Conspiracy is a derivative tort requiring an unlawful
means or purpose.  Chu v. Hong, 249 S.W.3d 441, 444 (Tex. 2008).  In
its summary-judgment motion, HTC asserted Banda presented no evidence of any of
the elements of her conspiracy claim. 

In response to HTC’s no-evidence motion, Banda highlights
the earnest-money contract for the sale of her property, the HUD-1 Settlement Statement,
a payoff invoice from Kevin Miller and Medallion Mortgage, and the documents
entitled “Schedule A,” “Schedule B,” and “Schedule C,” which were attached to
her summary-judgment response.  First, Banda argues that HTC had “no
contractual right” to act as the escrow agent because it was not listed on the earnest-money
contract as such; instead, Kevin Miller a/k/a ATG Mortgage was listed as the
escrow agent on the contract.  This “mistake and oversight,” according to
Banda, “is only possible between co-conspirators.”  She also claims the payoff
invoice from Medallion Mortgage was “fake” because it was not listed on “Schedule
C” to the “Title Commitment to Medallion Mortgage.”  

However, the “Schedule” documents attached to Banda’s
response do not indicate they are part of a “Title Commitment” to Medallion
Mortgage.  Indeed, the proposed borrower listed on “Schedule A” is Richard Payne,
who is not mentioned anywhere in Banda’s claims.  These schedules are also each
stamped “draft copy.”  Although it is true that Medallion Mortgage is not
listed in “Schedule C,” there is nothing, other than Banda’s bare assertions in
her briefing to this Court and her summary-judgment response, to indicate this
schedule has any bearing on the closing of Banda’s loan.  If anything, these
documents establish full disclosure of the transaction involving Medallion
Mortgage: the HUD-1 Settlement Statement includes the payoff to Medallion
Mortgage, Banda signed this statement, certifying that she had “carefully
reviewed” it, and Medallion Mortgage submitted an invoice for this payoff
amount to Banda.

Succinctly, other than Banda’s conclusory allegations
that these documents indicate a civil conspiracy, Banda did not present any
evidence to support this claim.  Moreover, as discussed in more detail below,
there is no evidence to support any of the underlying torts—fraud, breach of
fiduciary duty, intentional infliction of emotional distress—Banda asserted
against HTC.  Without an underlying unlawful or wrongful act, Banda cannot
establish her derivative conspiracy claim.  See id.  Under these
circumstances, we overrule her first issue.

C.  
Common Law and Statutory Fraud

In issues two and three, Banda argues she produced
probative evidence raising a genuine issue of material fact to support her
common law[3]
and statutory fraud claims.  To prevail on a common law fraud claim, a
plaintiff must establish: (1) the defendant made a material misrepresentation; (2)
the defendant knew the representation was false or made it recklessly without
any knowledge of its truth; (3) the defendant intended to induce the plaintiff’s
reliance on the representation; and (4) the plaintiff suffered an injury by actually
and justifiably relying on that representation.  Ernst & Young, L.L.P.
v. Pac. Mut. Life Ins. Co., 51 S.W.3d 573, 577 (Tex. 2001).  Relevant to
this issue, statutory fraud in real estate transactions consists of a false
representation of a past or existing material fact, when the false
representation is made to a person to induce her to enter into a contract and
relied upon by that person in entering the contract.  Tex. Bus. & Com. Code
§ 27.01(a) (Vernon 2009).

HTC asserted in its summary-judgment motion that
Banda did not present any evidence that HTC made any representation to her
regarding the financing of her home because the earnest-money contract for sale
of her home was signed before she closed the transaction at HTC.  HTC further
asserted that Banda had no evidence it induced her into entering the earnest-money
contract for the sale of her home.  In her summary-judgment response, Banda
stated:

Specifically, [HTC] asserted that it made no
representations to [Banda] regarding the refinancing of [her] home.  Nice try!

[Banda] did not and does not allege that [HTC] made any
representations to her regarding the refinance of her home. . . .[[4]]

. . . .  [Banda]’s allegation is that . . . HTC (i) was not
the escrow agent for the transaction, but paid itself the escrow fees and
fraudulently closed the transaction when it had no contractual right to do so.
(ii) that [sic] HTC paid for a “payoff” that is not reflected on schedule C of
the title commitment without proper verification.  (iii) The escrow officer for
HTC had other transactions similar to the one made the basis of this suit in
which the sellers were also duped into selling their house while one or more of
the Defendants in this suit faxed over an invoice with phantom “payoff” that
was paid to them by HTC and its escrow officers. (iv) At the time HTC closed
the transaction, the earnest money contract had expired.  When the earnest
money contract expired, Defendant HTC and its escrow officers had no further
right to close the transaction without renewing the contract. (v) there [sic]
is no evidence on file of a renewed earnest money contract.

When Defendant HTC closed the transaction and collected the
escrow fees even though the contract did not designate it as the escrow agent,
it fraudulently induced [Banda] into consummating the agreement.

Banda points to her affidavit
and the loan closing documents to support these allegations, but does not
explain how any of this evidence relates to her fraud claims.[5]  These
documents are not self-explanatory, and as discussed above, Banda certified she
had reviewed the Settlement Statement, which includes the allegedly fraudulent
payoff to Medallion Mortgage.  Other than the conclusory allegations in her
response to HTC’s summary-judgment motion, which are repeated in her appellate
briefing, there is nothing to support her claim that HTC made any false
material representations to her.  Thus, Banda did not present evidence raising
a genuine issue of material fact relative to common law and statutory fraud and
the trial court properly granted summary judgment in favor of HTC on these
claims.[6]  
Therefore, we overrule her second and third issues.

D.  
Breach of Fiduciary Duty

            In her fourth
issue, Banda contends she produced probative evidence raising a genuine issue
of material fact to support her fiduciary duty claim.  Rather than producing
evidence of this claim, she asserts (both on appeal and in the trial court)
that this portion of its motion should be treated as a traditional motion for
summary judgment because HTC failed to specify an element of this claim for
which she presented no evidence. We disagree.

The elements of a claim for breach of fiduciary duty
are: (1) a fiduciary relationship exists between the plaintiff and the
defendant; (2) the defendant breached its fiduciary duty to the plaintiff;
and (3) the defendant’s breach resulted in injury to the plaintiff or benefit
to the defendant.  Johnson, 73 S.W.3d at 200–01.  As is relevant here,
HTC asserted Banda did not present evidence it breached a fiduciary duty to
her.  Thus, HTC specified an element—breach—for which it alleged Banda did not
present evidence.  By failing to present any evidence to support this claim,
Banda has not met her summary-judgment burden.  See Tex. R. Civ. P.
166a(i) (“The court must grant [a no-evidence motion for summary judgment] unless
the respondent produces summary judgment evidence raising a genuine issue of
material fact.”).  We thus overrule her fourth issue.

E.  
Intentional Infliction of Emotional Distress

            Finally, in her
fifth issue, Banda argues she produced evidence on each element of her claim
for intentional infliction of emotional distress.  Similar to her breach of
fiduciary duty claim instead of producing evidence, she argues HTC failed to
state the specific element of this claim for which she presented no evidence. 
We must again disagree.

In its no-evidence motion for summary judgment, HTC
stated:

[Banda] has no evidence that [(1)]HTC acted intentionally
or recklessly; (2) its conduct was extreme and outrageous; (3) defendant’s
actions caused her emotional distress; or (4) the emotional distress that the
plaintiff suffered was severe.  Kroger Tex. Ltd. P’ship v. Suberu, 216
S.W.3d 788, 796 (Tex. 2006).

HTC thus identified the
elements of this claim for which Banda had no evidence, i.e., all of the
elements of this claim.  See Tex. R. Civ. P. 166a(i) (“The motion must
state the elements as to which there is no evidence.” (emphasis added)). 
By failing to present evidence to support each of the identified elements of
this claim, Banda has failed to meet her summary-judgment burden.  We overrule appellant’s
fifth and final issue.

Accordingly, we affirm the trial court’s judgment.

 

 

 

                                                                                    

                                                                        /s/        Charles
W. Seymore

                                                                                    Justice

 

 

 

Panel consists of Justices Yates, Seymore, and Brown.

 









[1]
Banda has not detailed what, if anything, occurred between October 2003 and
First Franklin’s foreclosure on the property in May 2006.





[2]
HTC objected to several of Banda’s statements as conclusory.  HTC also made
several objections to the form of the affidavit.  However, the trial court did
not rule on HTC’s objections.





[3]
We note that Banda asserted in her response to HTC’s no-evidence motion that
the only element HTC challenged was that the material misrepresentation element. 
But HTC actually challenged all the elements of fraud:  “Plaintiff has no
evidence on any elements of her common law fraud claim against HTC.”  





[4]
In her summary-judgment response, Banda essentially states HTC made no
representations to her regarding refinancing.  But in her live pleading, Banda
made the following allegations regarding her common law and statutory fraud
claims:

·        
HTC (and various other defendants) made representations to her
regarding the refinancing of her home.

·        
These representations were false because HTC (and the other
defendants) intended to sell her home rather than help her with refinancing as
she intended.

·        
HTC knew these representations were false when they were made.

·        
HTC did not disclose to Banda that the payoff to Medallion Mortgage
was not on the “title commitment.”

·        
These false representations were made for the “sole purpose of
inducing [Banda] to enter into an earnest money contract rather than a
refinancing agreement as original[ly] sought by [Banda].”

“A defendant need not . . .
show that the plaintiff cannot succeed on any theory conceivable in
order to obtain summary judgment; he is only ‘required to meet the plaintiff’s
case as pleaded.’”  SmithKline Beecham Corp. v. Doe, 903 S.W.2d 347, 355
(Tex. 1995) (quoting Cook v. Brundidge, Fountain, Elliott &
Churchill, 533 S.W.2d 751, 759 (Tex. 1976)).  





[5]
As to her allegation the earnest-money contract had expired, the terms of the
contract provide the closing of the sale should occur on or before August 30,
2003 “or within 7 days after objections to matters disclosed in the Commitment
or by the survey have been cured, whichever date is later.”  There is nothing
in the record establishing the closing of the loan occurred outside the
parameters provided by the contract.





[6]
Banda notes in her briefing, “The fraud is subtle.  Only a person with
knowledge of the real estate closing nuances will understand the fraud
involved.”  If such specialized knowledge were necessary to understand the
“subtle nuances” of the alleged fraud in this case, Banda was free to designate
and provide summary-judgment evidence from a real estate expert to support her
claims.