**William CHU, Petitioner,**

v.

**Chong Hui HONG, Respondent.**

No. 06–0127.

Supreme Court of Texas.

Argued Oct. 16, 2007.

Decided March 28, 2008.

Murry B. Cohen, Akin Gump Strauss Hauer & Feld, LLP, J. Stephen Barrick, Hicks Thomas & Lilienstern, LLP, Houston, and David F. Farris, Lively, Padfield & Stout, Fort Worth, TX, for Petitioner.

G. Stanley Cramb, Cramb & Marling, LLP, Bedford, TX, for Respondent.

Robert Andrew Simon, Barlow Garsek & Simon, L.L.P., Fort Worth, TX, for Amicus Curiae.

Justice BRISTER delivered the opinion of the Court.

A spouse who gives away community property to friends or relatives when divorce is imminent has defrauded the community estate. In such cases, a trial court can order the spouse to return the proper-

ty or take the fraud into account in making a just-and-right division.

But in this case the trial court did neither. After finding a husband sold community property to third parties without his wife's consent, the trial court ordered the buyers to return the property to the wife but allowed the husband to keep the money they paid for it, and added a judgment against the buyers and their lawyer for more than $1.75 million. Thus, because one spouse defrauded the other, both are better off and the community estate vastly increased. We hold the courts below erred in allowing one spouse to recover damages without first recovering the community property from the spouse who took it.

## I. Background

While visiting her relatives in Korea in 1996, Chong Hui Hong ("Hong") met and then married Gyu Chul Kim ("Gyu"). She then returned to Texas, Gyu soon followed, and in 1997 they bought a donut shop in Mansfield, Texas. Marital problems arose the next year, and Hong filed criminal assault charges against Gyu and withdrew an application for his green card. At about the same time, they both signed a contract to sell the donut shop for $180,000 to another couple, Myong Nam Kim and Kyon S. Kim ("the Kims").

When the contract's closing date came and went with no action, the Kims stopped payment on their $20,000 downpayment check. Hong and Gyu then sent a letter (drafted by Hong but signed only by Gyu as "Seller") demanding payment of the $20,000 and threatening criminal charges. In response, the Kims retained attorney William Chu, who demanded performance of the sales contract within four days and threatened civil litigation.

A few days later, Gyu appeared alone at Chu's office and agreed to close the sale. In the bill of sale (which Chu drafted), Gyu represented he was the "lawful owner in every respect" of the shop and had full authority to sell it. The Kims paid him $180,000: $90,000 in cash and checks, $46,668.29 by promissory note, and the rest by assuming a note Gyu and Hong still owed on their purchase of the shop. The Kims subsequently paid off both notes.

Sometime after the closing, Gyu wired the money he received from the sale to his parents in Korea. He then filed for divorce from Hong. Hong responded with a counterclaim for defrauding the community of the proceeds from the shop sale, and added a suit against the Kims and their attorney Chu for conversion and conspiracy. When his criminal assault case came to trial, Gyu was convicted and deported from the United States.

The divorce and fraud cases were tried five years later. Chu represented both himself and the Kims; Gyu appeared only by attorney and his deposition. A jury answered all questions favorable to Hong. In its final judgment, the trial court granted a divorce, declared the shop sale void and ordered the Kims to turn the premises and equipment over to Hong, allowed Hong and Gyu to each keep the marital property currently in their possession, and assessed no damages against Gyu other than attorney's fees of $65,000. The trial court assessed the same attorney's fees jointly against the other defendants, along with $247,000 for lost profits and interest, and punitive damages against the Kims for $20,000 and against their attorney Chu for $1,500,000. The Kims filed for bankruptcy, so only Chu appealed. In a divided opinion, the court of appeals affirmed.[1]

1. 185 S.W.3d 507.

## II. The Conversion Claim

 The only direct liability finding against Chu was that he converted Hong's property. Because Chu received nothing but a legal fee that was paid by his own clients, there is no evidence to support this finding.

Hong concedes Chu got nothing but a legal fee, and does not dispute it was paid by his clients the Kims, which of course is precisely what one would expect. None of that money could have come from Gyu or Hong; as they were *selling* the shop rather than *buying* it, the flow of money was the other way around. Even if Chu's fee was paid solely from profits later earned from the shop (though there was no evidence to that effect), money can be converted only if it is specifically identified and held in trust.[2] As Hong parted with no cash in any transaction here, there is simply no evidence that Chu converted anything that belonged to her. Thus, the conversion finding cannot support the judgment against Chu.

## III. The Conspiracy Claim

 Jurors found Chu and the other defendants were part of a conspiracy. Conspiracy is a derivative tort requiring an unlawful means or purpose, which may include an underlying tort.[3] Chu did not object when the conspiracy question was submitted without conditioning it on any other tort finding.[4] Thus, it can support the judgment if there was some evidence of a conspiracy to commit any of the three other torts in the charge: fraudulent transfer, conversion, or breach of fiduciary duty.

 While the jury found Hong's husband Gyu committed each of these torts, no judgment was entered against him on that basis for a very straightforward reason: such torts do not exist. Ten years ago in *Schlueter v. Schlueter*, we reaffirmed that under the community-property law of Texas, "there is no independent tort cause of action for wrongful disposition by a spouse of community assets."[5] That is due to "the essential character of the wrong: a deprivation of community assets as opposed to a tort committed against a person or his or her separate property."[6]

 As we noted in *Schlueter*, personal injury claims are the separate property of each spouse, and thus can be asserted between spouses as independent torts.[7] But waste, fraudulent transfer, or other damage to community property are claims belonging to the community itself, so they must be included in the trial court's just-and-right division of communi-

---

2. *See Mauriceville Nat'l Bank v. Zernial*, 892 S.W.2d 858, 860 (Tex.1995); *Houston Nat'l Bank v. Biber*, 613 S.W.2d 771, 774 (Tex.Civ. App.-Houston [14th Dist.] 1981, writ ref 'd n.r.e.) ("The general rule is that trover lies for the conversion of money only when there is an obligation resting on the defendant not to convert to his own use specific coin or notes.").

3. *See NME Hosps., Inc. v. Rennels*, 994 S.W.2d 142, 148 (Tex.1999); *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex.1996).

4. *Cf.* STATE BAR OF TEX., TEXAS PATTERN JURY CHARGES—BUSINESS, CONSUMER, INSURANCE & EM-PLOYMENT PJC 109.1 (2006) (providing that conspiracy question should be "[c]onditioned on findings of a statutory violation or a tort (other than negligence) that proximately caused damages").

5. 975 S.W.2d 584, 589 (Tex.1998).

6. *Id.*

7. *Id.* at 587 ("[R]ecovery for personal injuries of a spouse, including pain and suffering, is the separate property of the injured spouse, and therefore does not add to the marital estate.")(citing *Twyman v. Twyman*, 855 S.W.2d 619, 625 n. 20 (Tex.1993)).

ty property upon divorce.[8] Allowing independent torts between spouses for community damage would thus require fault to be determined twice—once in the tort action, and again in the property division. To avoid that, the just-and-right division is the "sole method" for adjudicating such claims, and "no independent cause of action exists in Texas ... when the wrongful act defrauded the community estate."[9]

In this case, Hong proved her former husband sent the proceeds of community property to his parents. While the trial court could take this into account in making a just-and-right division, *Schlueter* makes quite clear it could not be pleaded as an independent cause of action, at least against Gyu.[10]

■ Hong notes correctly that in *Schlueter* we did not decide whether torts against the community estate could be alleged against a third-party.[11] As a general matter, they clearly can; if a third party steals community property, surely either spouse or both can seek recovery in tort for it.[12]

■ But the question presented here is a narrower one: whether a third party can be held liable in tort when community property *is taken by one of the spouses.* We answered that question in the negative in *Cohrs v. Scott.*[13] There, a divorcing wife settled all her property claims against her husband, and then sought damages against a third party for helping her husband transfer two cars to a mistress. This Court held that "the fraud having been initiated and carried out mainly by the husband, [the wife] must look primarily to him and his property to right the wrong."[14]

For several reasons, we believe that remains the proper rule. If one spouse retains the fruits from defrauding the community estate, it is hard to see how the estate as a whole has been damaged, not to mention why someone else should pay for it. While Gyu and the funds are in Korea, there was no evidence Hong could not recover them from him there; indeed, there was no evidence she even tried. The judgment here did not order Gyu to return those funds; instead, Hong ended up with the shop and Gyu ended up with the funds the Kims paid for it. We do not think one spouse should be able to double the community estate by defrauding the other.

■ Further, if a spouse cannot be liable for tort and punitive damages in a case like this,[15] it is unclear under what theory co-conspirators can. Hong argues that Gyu's fraud against the community estate was still an unlawful act, even though it could only be addressed in the just-and-right property division. But co-conspirators are each responsible for the damage the conspiracy caused;[16] if Gyu's liability is limited to returning the property or

---

8. *Id.* at 588–89; TEX. FAM. CODE § 7.001.

9. *Schlueter*, 975 S.W.2d at 588–89.

10. *Id.* at 589.

11. *Id.* at 590.

12. *See, e.g., Douglas v. Delp*, 987 S.W.2d 879, 882–83 (Tex.1999) (holding legal malpractice claim was community property, and thus became part of one spouse's bankruptcy estate); *Graham v. Franco*, 488 S.W.2d 390, 396 (Tex. 1972) (holding claim for medical expenses incurred and lost wages was community property, "and both spouses have a claim against the wrongdoer.").

13. 161 Tex. 111, 338 S.W.2d 127, 133 (1960).

14. *Id.*

15. *Schlueter*, 975 S.W.2d at 589.

16. *State v. Standard Oil Co.*, 130 Tex. 313, 107 S.W.2d 550, 559 (1937).

adjusting the community division, the liability of co-conspirators should be as well. Moreover, if one spouse can enlarge the community estate by suing the other's relatives, many acrimonious divorce cases will undoubtedly become more so. That may be necessary when relatives have community property in their hands; but when they do not, little is gained by adding third parties if the property can be restored through orders between the former spouses.

We are especially reticent to open the door to such claims here against an opposing party's attorney. As an attorney, Chu had a fiduciary duty to further the best interests of his clients, the buyers;[17] imposing a second duty to the sellers would inevitably conflict with the first.[18] An attorney who personally steals goods or tells lies on a client's behalf may be liable for conversion or fraud in some cases.[19] But there are no such allegations here; the only claim is that Chu should have refused to draw up the bill of sale (although his client asked him to) because he knew one spouse was selling the shop without the other spouse's consent—even though neither spouse was his client. We need not approve of Chu's ethics to hold that *Schlueter* requires Hong to seek restitution from her own husband before seeking it from someone else's lawyer.

We disagree with Hong that *Schlueter* must yield to the provisions of the Uniform Fraudulent Transfer Act.[20] *Schlueter* itself involved an alleged fraudulent transfer, and made no exception for that statute. Moreover, the two are entirely consistent: the Act provides for equitable remedies to rescind the fraudulent transfer,[21] or a damage assessment limited to the amount of the property transferred;[22] *Schlueter* allows precisely the same remedies against a former spouse.[23]

■ Finally, even if a conspiracy action existed despite *Schlueter*, the evidence here would not support it. Chu could only be liable for conspiracy if he agreed to the *injury* to be accomplished; agreeing to the *conduct* ultimately resulting in injury is not enough.[24] Viewing all the evidence in a light favorable to the verdict,[25] Chu knew

17. *Hoover Slovacek LLP v. Walton*, 206 S.W.3d 557, 560–61 (Tex.2006).

18. *Barcelo v. Elliott*, 923 S.W.2d 575, 577 (Tex.1996) ("At common law, an attorney owes a duty of care only to his or her client.... Without this 'privity barrier,' the rationale goes, clients would lose control over the attorney-client relationship....").

19. *See, e.g., Estate of Stonecipher v. Estate of Butts*, 686 S.W.2d 101, 103 (Tex.1985); *Poole v. Houston & T.C. Ry. Co.*, 58 Tex. 134, 137–38 (1882); cf. *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 794 (Tex.1999) (noting fraud actions cannot be brought against an opposing attorney in litigation as reliance in those circumstances is unreasonable).

20. *See* Tex. Bus. & Com.Code §§ 24.001–.013.

21. *Id.* § 24.008.

22. *Id.* § 24.009(b), (c).

23. 975 S.W.2d at 588 ("[I]t is well settled that a trial court may award a money judgment to one spouse against the other in order to achieve an equitable division of the community estate. Of course, the money judgment can only be used as a means for the wronged spouse to recoup the value of his or her share of the community estate lost through the wrongdoer spouse's actions." (citation omitted)).

24. *Tri v. J.T.T.*, 162 S.W.3d 552, 556–57 (Tex. 2005).

25. *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex.2005) ("Courts reviewing all the evidence in a light favorable to the verdict thus assume that jurors credited testimony favorable to the verdict and disbelieved testimony contrary to it.").

that Gyu was selling his wife's interest without her knowledge or consent. But Gyu told the Kims the money from the sale would be used to pay off a loan from his parents, and the rest would be shared with Hong; Hong denied there was any such loan, but there was no evidence Chu or the Kims knew that at the time. Conspiracy may be proved by inferences from circumstantial evidence,[26] but inferring an agreement to the ultimate injury generally arises "from joint participation in the transactions *and from enjoyment of the fruits of the transactions.*"[27] As there was no evidence Chu's fee depended on keeping the proceeds from Hong, there is no basis for inferring he intended for her to be cheated.

Because Hong has no tort claim against her former husband under Texas community-property law, she has no conspiracy claim against Chu for conspiring in such a tort.[28] The courts below erred in concluding otherwise.

### IV. The Aiding–a–Fiduciary–Breach Claim

Finally, the jury found that Chu knowingly participated, aided, or assisted Gyu in breaching his fiduciary duty to his former wife. Assuming such a claim exists and is somehow different from a conspiracy to breach his fiduciary duty, it too is excluded by *Schlueter* for the reasons noted above.

* * *

Accordingly, we reverse the court of appeals' judgment and render judgment that Hong take nothing against William Chu.

---

26. *Jernigan v. Wainer*, 12 Tex. 189, 193 (1854) ("When men enter into conspiracies, they are not likely to call in a witness.... In such cases the injured party must necessarily have recourse to circumstantial evidence. For it is only by the inferences and deductions which men properly and naturally draw from the acts of others in such cases, that their intentions can be ascertained.").

27. *Int'l Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 582 (Tex.1963) (emphasis added).

28. *See Am. Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 438 (Tex.1997) (holding dismissal of tort claims required dismissal of conspiracy claim).