**Christina Lee KITE f/k/a Christina Lee Barnhill, Appellant**

*v.*

**Charles Edward KING and Sprouse Shrader Smith, P.C., Appellees**

**No. 07–15–00324–CV**

Court of Appeals of Texas, Amarillo.

May 11, 2016

Doug Perrin, J. Mark Perrin, for Appellant.

James L. Wharton, Christopher B. Slayton, for Appellee.

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

## OPINION

Brian Quinn, Chief Justice

Christina Lee Kite, formerly Christina Lee Barnhill (Barnhill), appeals from a summary judgment denying her recovery against Charles Edward King and the law firm of Sprouse, Shrader, Smith, P.C. King is a member of the latter firm, and we refer to them collectively herein as King. Barnhill had sued King for legal malpractice purportedly relating to a transfer of property (a home in Colorado) from the marital estate of Barnhill and Dr. Bill Barnhill (the doctor). The transfer was to a residential trust, and, according to Barnhill, constituted a fraud upon the community estate. After the transfer, Barnhill and the doctor divorced. And, though the issue of fraud was raised in that divorce proceeding, nothing of record indicates that it was adjudicated formally by the trial court before the litigants settled their disputes and executed an agreed divorce decree. Nonetheless, Barnhill initiated the suit from which this appeal arose. The three issues before us involve whether 1) the trial court erred in granting summary judgment, 2) her cause of action was barred by § 7.009 of the Texas Family Code, and 3) her claims of legal malpractice were not impermissibly fractured. We affirm.

### Standard of Review

Via the motion for summary judgment, King urged various grounds. However, the trial court did not specify on which ground it relied in granting the motion. Under that circumstance, the burden falls on Barnhill to illustrate that none of the grounds support the decision. *Darby v.*

*N.Y. Times Co.,* No. 07–12–00193–CV, 2014 WL 818614, *1–2, 2014 Tex.App. LEXIS 2197, at *3 (Tex.App.–Amarillo, February 26, 2014, pet.denied) (mem.op.). Should she fail to do that, then the summary judgment must be affirmed. *Id.*; *see Western Investments, Inc. v. Urena,* 162 S.W.3d 547, 550 (Tex.2005) (stating that "[b]ecause the trial court's order granting summary judgment does not specify the basis for the ruling, we must affirm the trial court's judgment if any of the theories advanced are meritorious"). Our assessment of whether she met her burden is governed by the standard of review explained in *KCM Fin., LLC v. Bradshaw,* 457 S.W.3d 70 (Tex.2015) and *Duarte–Viera v. Fannie Mae,* —— S.W.3d ——, 2016 WL 737698 (Tex.App.–Amarillo, 2016, no pet.). In lieu of reiterating that standard, we refer the parties to those opinions.

### Issue—Did the Trial Court Err in Granting Summary Judgment to King

Through the first ground for summary judgment, King asserted that Barnhill "has no claim related to the alleged fraudulent transfer of the Snowmass property as all such claims were required to be resolved during the divorce." The second encompassed the argument that "Section 7.009 of the Texas Family Code provides the sole remedy for fraud on the community." Via the third ground, King averred that Barnhill's claims were barred by the doctrine of *res judicata.* That "[b]y her own judicial admission, [Barnhill] has already been compensated for the Snowmass property in the divorce" comprised the fourth ground. In the fifth ground, King alleged that her "claim for exemplary damages is barred as a matter of law." Fracturing a cause of action formed the basis of the sixth ground. And, as previously said, the trial court did not specify the ground or grounds it found meritorious.

■ So, we begin our analysis with the first ground urged by King in the summary judgment motion, that pertaining to whether Barnhill's claims were required to be resolved in the divorce. Concerning that proposition, King argued that: 1) the "... tort claims for negligence, breach of fiduciary duty, and conspiracy to commit fraud all fail as a matter of law because any tort claim with regard to the alleged wrongful transfer of the Snowmass property belonged to the community estate and was required to be resolved during the divorce proceeding"; 2) the "... claims involving the alleged fraudulent transfer of the Snowmass property were claims to be factored into the 'just and right' division of the Barnhills' property during the divorce proceeding"; 3) Barnhill "... does not have an independent tort claim outside the divorce action for any alleged fraudulent transfer – whether against Dr. Barnhill, King, or the Law Firm"; and 4) "because [she] ... has no independent tort claim outside the divorce proceeding, she likewise has no claim for conspiracy to commit those torts against King or the Law Firm, third parties who reaped no benefit from the transaction." (Emphasis in original). We agree.

To place the issue in the proper frame of reference, we feel it necessary to further discuss the underlying circumstance which culminated in the lawsuit. They begin with the acquisition of a home in Snowmass, Colorado during the marriage of Barnhill and the doctor. The timing of the

acquisition allegedly rendered the property presumptively community in nature. *See* TEX. FAM. CODE ANN. §§ 3.002 & 3.003 (West 2006) (stating respectively that community property consists of the property, other than separate property, acquired by either spouse during marriage and property possessed by either spouse during or on dissolution of marriage is presumed to be community property); *Pearson v. Fillingim*, 332 S.W.3d 361, 364 (Tex.2011) (stating that "[a]ll property acquired during a marriage is presumed to be community property").[1] Nonetheless, the deed to it was placed solely in the doctor's name. Thereafter, it was decided to transfer the home to a residential trust. King was retained to assist in effectuating the transfer. The mechanics utilized in doing so included Barnhill executing a deed transferring whatever interest she had in the home to the doctor. Allegedly, she was under the impression that it was already his separate property, and no one advised her otherwise.[2]

Sometime after the home was conveyed to the trust, the doctor and Barnhill divorced. During the divorce proceeding, Barnhill came to question whether the conveyance of the Snowmass home to the trust constituted an act of fraud upon the community estate. This led her to seek the reconstitution of that estate via a claim under § 7.009 of the Texas Family Code,[3] and alleged that her husband had defrauded and breached fiduciary duties owed her.

1. We do not address whether the Snowmass home was separate or community property but rather accept Barnhill's characterization for purposes of this appeal.

2. In his deposition taken as part of the divorce, the doctor agreed that he told King the Snowmass house was acquired with his separate property.

3. The statute provides that if a factfinder "determines that a spouse has committed actual or constructive fraud on the community, the court shall: (1) calculate the value by which the community estate was depleted as a result of the fraud on the community and calculate the amount of the reconstituted estate; and (2) divide the value of the reconstituted estate between the parties in a manner the court deems just and right." TEX. FAM. CODE ANN. § 7.009(b) (West Supp.2015).

So too did she aver that he conspired with "others" to achieve his goal.[4]

Though the "others" were not named in the pleading, subsequent emails between legal counsel for the doctor and Barnhill illustrated King to be a culpable party. For instance, in one of those missives, Barnhill's attorney not only described the transfer "as a subterfuge, nonsensical and fraudulently induced" but also warned that "if these questions cannot be quickly and satisfactorily answered, then I am going to want to take the depositions of several persons, including . . . the lawyer doing the supposed estate plan that called for [Barnhill] to make a gift of Snowmass property. . . ." He also wrote in other emails that 1) the "[p]ersons . . . [he] would anticipate deposing would be of course Dr. Barnhill . . . [and] Charles King and Associate . . . ," 2) he ". . . anticipate[d] amended pleadings . . . [being] filed . . . adding Dr. Barnhill as a Party in his capacity as Trustee and adding tort claims on behalf of the community seeking to have the Colorado . . . conveyance[ ] set aside and back to the community estate," and 3) while " *[t]he fraud claims against Dr. Barnhill are resolved[,]* " "[t]he negligence claim against Sprouse, Shrader and

Smith is alive and well, and [I] don't want there to be any confusion about that." (Emphasis added).

After the "fraud claims against Dr. Barnhill [were] resolved," the trial court executed a "Final Divorce Decree" divorcing the couple and dividing the marital estate, among other things. By that time, though, Barnhill had initiated her lawsuit against King. Via her live pleading, she accused King of 1) being retained to represent both her and the doctor in "estate planning activities," 2) taking "instructions solely from Dr. Barnhill" despite representing both parties, 3) failing to speak with or explain "to her the steps which were being taken, the potentially adverse effects on [her]," or advise her to "seek independent counsel," 4) drafting "documents which placed a residence owned by the parties in Snowmass, Colorado into a residential trust and prepar[ing] for [her] execution of a Gift Deed from her to Dr. Barnhill of all of her right, title and interest in and to the Snowmass property and the trust," 5) being negligent due to the foregoing allegations and failing ". . . to protect [her] interests in the transactions with her husband on the Snowmass property," 6) engaging "in a conspiracy with

---

4. The allegation of conspiracy in Barnhill's First Amended Respondent's Answer and Counter–Petition for Divorce consisted of:

Bill Scott Barnhill, Individually and in his capacity as Trustee of the 2011 Barnhill Residence Trust conspired with others to deprive the Community Estate of valuable property, inclusive of, but not limited to the Snowmass Residence and the real property in Arizona. The object of the conspiracy and involvement between Bill Scott Barnhill, Individually and in his capacity as Trustee of the 2011 Barnhill Residence Trust and others was to accomplish an unlawful purpose, i.e. to deprive the Community Estate and, in fact, Christina Lee Barnhill, as a member of the community estate between Christina Lee Barnhill and Bill Scott Barnhill, of the value of said real

property. Bill Scott Barnhill, Individually and in his capacity as Trustee of the 2011 Barnhill Residence Trust and others had a meeting of the minds on the unlawful purpose, and Bill Scott Barnhill, Individually and in his capacity as Trustee of the 2011 Barnhill Residence Trust committed an unlawful [act], with the assistance of others committed overt acts to further the unlawful purpose. The Community Estate and Christina Lee Barnhill has suffered injury as a proximate result of the wrongful acts of Bill Scott Barnhill, Individually and in his capacity as Trustee of the 2011 Barnhill Residence Trust.

However, a like allegation was omitted from her Third Amended Counter–Petition for Divorce.

Dr. Barnhill to defraud [her] and deprive her of her property rights," and 7) breaching "fiduciary duties to [her] by their lack of disclosure to her and failure to honestly apprise her of the adverse effect on her rights of the actions which they were undertaking." Other allegations consisted of her averring that 1) she "did not receive her fair share of property accumulated during the marriage because of the actions taken by [King] at the direction of Dr. Barnhill," and 2) as a result of the aforementioned conduct, "[s]he lost valuable rights and interests in community property and seeks compensation for those losses."

In comparing the allegations asserted against King to those levied against the doctor through pleadings filed in the divorce, one cannot deny that both have a common source. That source is the acquisition of a supposed community asset (*i.e.* the Snowmass home) and its later transfer to the residential trust. Both encompass allegations about the doctor conspiring with others to defraud her of her interest in that community asset and the prosecution of claims sounding in tort for recompense related to that lost interest. These indicia bring to mind the "question presented" in *Chu v. Hong*, 249 S.W.3d 441 (Tex.2008). There, our Supreme Court had to determine "whether a third party can be held liable in tort when community property *is taken by one of the spouses.*" *Id.* at 445 (emphasis in original). It then concluded that the question had been "answered … in the negative in *Cohrs v. Scott*, [161 Tex. 111, 338 S.W.2d 127 (Tex. 1960)]." *Id.* "There [*i.e.* in *Cohrs*], a divorcing wife settled all her property claims against her husband, and then sought damages against a third party for helping her husband transfer two cars to a mistress. This Court held that 'the fraud having been initiated and carried out mainly by the husband, [the wife] must look

primarily to him and his property to right the wrong.'" *Id., quoting, Cohrs v. Scott,* 161 Tex. 111, 338 S.W.2d 127, 133 (1960).

The facts of *Cohrs* are both interesting and analogous. They too involve a couple divorcing one another. Like Barnhill here, Mrs. Scott complained about her husband committing a fraud on the community. It consisted, though, of him acquiring a car for a female acquaintance of his with community funds. *Cohrs v. Scott,* 338 S.W.2d at 128. Furthermore, Cohrs allegedly helped Mr. Scott in the endeavor. Apparently, the dispute was being litigated by a jury when the trial court instructed a verdict favoring Cohrs, who had been joined as a party. Thereafter, the Scotts announced that they had reached an agreement on a division of their property, subject to Mrs. Scott's claim against Cohrs. *Id.* That resulted in the trial court dismissing the jury and rendering a judgment "dividing the property pursuant to the agreement." *Id.* In arriving at the decision, the *Cohrs* court proffered reasoning in addition to that quoted in *Chu.* For instance, it observed that Mrs. Scott had "entered into an agreement with [her ex-husband] for an amicable division of the community estate, and judgment was entered thereon." *Id.* at 133. Furthermore, that the judgment was "*presumed* to have equitably adjusted and divided the estate for the spouses, taking into consideration all claims and counterclaims between them." *Id.* (emphasis added). Then, it observed that Mrs. Scott had "received substantial properties …" and, between "Scott and Cohrs, Scott was the principal actor as to [the female acquaintance], the automobiles furnished her, and the fraud on Mrs. Scott." *Id.* The court closed its discussion by stating that "[t]he trial court here, in dividing the community property, and the parties in agreeing to such settlement, *presumably* compensated Mrs. Scott

for any loss she may have suffered on the purchase and disposition of the Cadillacs." *Id.* (emphasis added).

Here too do we have a wife who complained about her husband's engagement in fraud upon the community estate. That claim was asserted during the divorce, along with the identity of those purportedly helping him commit the fraud. Before it could be tried, though, Barnhill "resolved" her claim against her husband, according to her counsel's email and affixed her signature to a divorce decree dividing the marital estate.[5] Above her signature appeared the words: "APPROVED AND CONSENTED TO AS TO BOTH FORM AND SUBSTANCE." One need only peruse that decree, which the trial court ultimately signed, to see that she received substantial property. More importantly, the distribution was deemed by the trial court as "a just and right division of the parties' marital estate, having due regard for the rights of each party and the child of the marriage." *See Ginsburg v. Chernoff/Silver & Assocs.*, 137 S.W.3d 231, 237 (Tex.App.–Houston [1st Dist.] 2004, no pet.) (holding that, as a result of the settlement agreement dividing the marital estate, Dr. Ginsburg could not present evidence sufficient to raise a material fact issue concerning the element of damages as to his claims against Chernoff for conversion, conspiracy to convert, fraud, and conspiracy to defraud).

Following *Cohrs*, we too presume that the trial court "equitably adjusted and divided the estate of the spouses, taking into consideration all claims and counterclaims between" the spouses. *Cohrs*, 338 S.W.2d at 133. It "presumably compensated [Barnhill] for any loss she may have suf-fered" due to the disposition of the Snowmass home, given that it implemented their agreement. *Id.* Consequently, we have little problem in applying the holding of *Chu* to the situation at bar.

■ A third party, such as King, cannot be held liable in tort when community property is taken by one of the spouses. *Chu v. Hong*, 249 S.W.3d at 445. Thus, and to the extent that she asserted tort claims sounding in legal malpractice, breached fiduciary duty, fraud and the like to recover community property or the value of her lost interest in it, her remedy was and is restricted to pursuing a just and right distribution of the marital estate. Of course, she was free to also seek, during the divorce, a reconstitution of that estate per § 7.009 of the Family Code to assist in achieving a just and right distribution.

Barnhill, however, attempts to distinguish *Chu* and *Schlueter v. Schlueter*, 975 S.W.2d 584 (Tex.1998) (holding there was no independent tort cause of action between spouses for damages to the community estate), by contending that "[s]he is not suing the lawyers for fraud on the community, but for their error in representing her before the divorce was even filed." And, that error involved a duty owed her by King independent of the doctor's purported misconduct.

■ No doubt, attorneys owe their client duties. *See e.g. Nath v. Tex. Children's Hosp.*, 446 S.W.3d 355, 367 (Tex. 2014) (stating that an attorney owes a client a duty to inform the client of matters material to the representation if they are within the scope of representation); *Willis v. Maverick*, 760 S.W.2d 642, 645

---

5. The attorney who represented Barnhill in the divorce and sent the emails we mentioned filed an affidavit that was attached to her response to King's summary judgment mo-tion. He did not deny that the fraud claim was settled but rather explained that "there was no particular amount of money attributed to the Snowmass property in the settlement."

(Tex.1988) (stating that an attorney is obligated to use the skill, prudence and diligence commonly exercised by practitioners of his profession). Similarly indisputable is that breach of those duties may vest the client with a cause of action sounding in tort against the attorney. And, as recognized in *Chu*, torts resulting in personal injury are the separate property of a spouse. *Chu v. Hong*, 249 S.W.3d at 444–45. And because separate property is not subject to division in a divorce, *Pearson v. Fillingim*, 332 S.W.3d 361 (Tex.2011), *citing Eggemeyer v. Eggemeyer*, 554 S.W.2d 137, 139 (Tex.1977), one may question whether *Chu*, *Schlueter*, and *Cohrs* apply. Indeed, *Chu* indicates as much when stating that "waste, fraudulent transfer, or other damage *to community property* are claims belonging to the *community itself, so they must be included in the trial court's just-and-right division of community property* upon divorce." *Id.* (emphasis added). In other words, if the claims belong to the community, they are to be addressed via the trial court's duty to make a just and right division of that estate. If they are separate property, then they remain not only the spouse's but also susceptible to prosecution by the spouse after divorce.

■ Consequently, we turn to the question of whether or not Barnhill's causes of action are community or separate property. Our resolution of that query is guided by the Supreme Court's opinion in *Douglas v. Delp*, 987 S.W.2d 879 (Tex.1999). It too involved a claim of legal malpractice. There we were told that "when different kinds of damages are claimed in a single cause of action, we look to the nature of each injury when classifying those damages as community or separate property." *Id.* at 883. The nature of the injury or damage suffered by Barnhill is best exemplified by the averment describing her injury within her live pleading. She complains of "lost valuable rights and interests in *community property* and seeks compensation for *those losses*." (Emphasis added). She does not seek recovery for some type of bodily injury such as pain and suffering. *See id.* (holding that claims for pain and suffering are the separate property of a spouse). She wants to be paid for the value of a community asset she believed was improperly lost due to the supposed misfeasance of King. In seeking loss related to a community asset her causes of action against King must necessarily be community property. *See id.* (holding that because "Gertrude [sought] damages for: (1) the decline in the Delps' net worth based on the loss of their interests in the Nu–Way companies, (2) Billy's lost earning capacity, (3) Billy's credit reputation, and (4) mental anguish," and she and her husband "obtained the Nu–Way companies during the marriage and managed them together," the "... economic loss attributable to the loss of their interests in those companies was an injury to jointly-managed community assets."). Harkening back to *Chu* then, "waste, fraudulent transfer, *or other damage to community property* are claims belonging to the community itself, so they must be included in the trial court's just-and-right division of community property upon divorce." *Chu v. Hong*, 249 S.W.3d at 444–45 (emphasis added). So, any purported cause of action against King belonged to the community and had to be included in the just and right division of the marital estate. And, to paraphrase *Cohrs*, "[t]he trial court ... in dividing the community property, and the parties in agreeing to such settlement, presumably compensated" Barnhill for any loss to the community estate for which she seeks redress from King. *Cohrs v. Scott, supra.*

In sum, we must affirm the trial court's summary judgment if any of the theories

advanced in King's motion is meritorious. Our having found at least one theory meritorious obligates us to affirm the decree. The trial court's summary judgment is affirmed.