

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-23-00449-CV

_____

MUNZER ADEL MOHAMMED, Appellant

V.

SHAUN ROCHELLE MOHAMMED, Appellee

On Appeal from the 233rd District Court
Tarrant County, Texas
Trial Court No. 233-711439-22

Before Sudderth, C.J.; Bassel and Wallach, JJ.
Memorandum Opinion by Justice Bassel

# MEMORANDUM OPINION

## I. Introduction

Appellant Munzer Adel Mohammed (Husband) appeals from a final divorce decree that dissolved his marriage to Appellee Shaun Rochelle Mohammed (Wife). In seven issues,[1] Husband argues generally that the trial court abused its discretion by failing to grant a joint motion for continuance, that the property division was not just and right, and that the trial court abused its discretion by ordering Husband to pay a $62,500 judgment in monthly installments that exceed his entire monthly income. We affirm the parties' divorce, but because there are no pleadings to support the portions of the final decree reconstituting the community estate and ordering Husband to pay Wife $62,500 and because there is no evidence to support treating the $62,500 as a reimbursement claim, we reverse the trial court's division of the community estate, and we remand this case to the trial court for a new trial on the composition of the marital estate and to make a just-and-right property division consistent with this opinion.

## II. The Trial

It is uncontested that the parties were married for over thirty-nine years and that they had six children together—none of whom were minors at the time of the

---

[1]Husband's amended brief that was filed on May 7, 2024, numbers his issues one through five and then seven and eight, omitting a sixth issue. For consistency, we use the same numbering to match Husband's brief, but we note that he presents a total of seven—not eight—issues.

divorce. The parties' stories differ regarding the ownership of their assets and the life that Husband lived overseas during the latter part of the marriage. Wife contended that Husband had a second wife in Jordan while Husband maintained that the woman was simply his live-in nurse.

### A. Wife's Testimony

According to Wife, in 1996, the parties purchased the properties located at 208 Slaughter Street and 210 Slaughter Street in Arlington; each property had two duplexes on it, and the buildings were enumerated 208A, 208B, 210A, and 210B. Years later, the parties "signed 208 over to the children" and used 210 Slaughter Street as the marital residence (the 210 residence).

Also according to Wife, at the end of 2003, the parties began the purchase of a house in Jordan and wired $40,000 to $50,000 from their Bank of America account for the purchase. She further explained that the house was not inherited from Husband's family; they purchased it from family friends.[2] The Jordan house had two apartments, which Husband and Wife rented to third parties. Husband moved to Jordan first to prepare the home, and Wife and the children moved to Jordan in 2004. They lived in the home as a family for approximately seven years.

---

[2]Wife testified that the house was initially purchased under her brother-in-law's name because she and Husband were not in Jordan at that time but that ownership was later transferred to Husband's name. One of the Mohammeds' sons was with Husband when the deed was transferred into Husband's name.

3

In 2008, Husband took out a loan for $82,400 secured by the 210 residence and used the money to purchase a property in "Palestine" (the term used by the parties). Husband ultimately sold this property but did not use it to pay off the loan. Wife said that at the time of the trial, she was still making monthly payments of $650 to pay down the loan, which had a balance of $35,356. Wife said that Husband had initially contributed $620 monthly from his Social Security checks[3] to pay down the loan but that approximately three and a half years prior to the divorce trial, he had stopped contributing.

Husband and Wife returned to the United States in 2010 for Husband to undergo back surgery. But in 2014, Husband took his mother back to Jordan because she did not want to die in the United States. Husband's mother passed away in early October 2014.

On October 31, 2014, while Husband was still in Jordan, Wife called him because she had not heard from him in a few days; when he answered, she heard music in the background. Husband said that the music was from his wedding party.

After that, Husband chose to stay in Jordan; Wife was not able to support their children on Husband's Social Security stipend, so she found employment. At the time of the trial, she was a contract employee and was paid every two weeks with her take-

---

[3]Wife said that Husband could not work like he used to due to his back. Husband received Social Security disability payments as a result.

4

home pay ranging from $706.05 to $1,117.50 during the eight weeks preceding the trial.

During the nine and a half years between the time that Husband left for Jordan in 2014 and the trial in 2023, Wife said that he had spent only seventeen to eighteen months in the United States.[4] Wife testified that Husband predominantly lived in the Jordan house with his other wife and her son, whom Husband provided for, and that he was still collecting rent from leasing the two apartments that are on that property. Wife estimated that the Jordan home was worth at least $450,000. Wife said that Husband had made a lot of improvements to the property "even after [the family had] left there and since he'[d] been married [to his other wife]."

With regard to the 210 residence, Wife relied on the Tarrant Appraisal District's market value of $273,952. Wife asked to be awarded the 210 residence and said that Husband could have the Jordan home.

Wife agreed that she was seeking "a disproportionate share [of the community estate] because of the . . . reimbursement claims" that she had pleaded and because of the $82,400 that was spent to purchase the Palestine property but was never used to pay off the 210 residence loan when the Palestine property was sold.

_____

[4]When Husband visited the United States, he stayed in 208B, which is part of the 208 Slaughter Street duplex that the parties had conveyed to their children.

5

## B.    Son's Testimony

Abdulahi Mohammed, one of the parties' sons, testified that in the summer of 2015 when he was sixteen years old he had visited Husband in Jordan.  Son testified that Husband had introduced his second wife to him as "his wife"; she was living in the Jordan home along with her child and her mother.  Son testified that Husband and his second wife slept in the same bedroom with the door locked.

Son said that after 2014, Wife was left to take care of him and his siblings and that she had to find work.  Son testified that Wife did not file for divorce immediately because Husband "kept on saying that he was going to fix it, [that] he was going to be better, [and that] he was going to be more fair, and it just never happened."

Son was asked about one of Husband's doctor visits that he attended.  Son testified that Husband had asked the doctor if he would be able to take Viagra due to his health conditions.[5]

## C.    Oldest Son's Testimony

Khalil Mohammed, the parties' oldest son, was asked whether he was aware of money that was sent overseas.  Oldest Son responded that Husband and Wife had owned 2.5 acres across the street from the 208 and 210 residences, that the 2.5 acres was sold for what became AT&T stadium, and that the money was used to purchase two properties in Jordan in addition to the house that was purchased there.  Oldest

---

[5]The parties' oldest daughter also testified at trial and said that she had picked up a prescription for Viagra for Husband.

Son said that the Jordan home was completely paid off by the time that the family moved there in 2004. But Oldest Son said that Wife was not asking for any money or ownership interest related to the two Jordan properties.

Oldest Son testified that when he went to his grandmother's funeral in 2014, he was introduced to Husband's then-fiancée and her son. After Husband married his second wife, he told Oldest Son that he needed to make sure that his second wife was included "with all the dividing of everything" upon Husband's passing. Oldest Son testified that he knew "nothing about a nurse." Oldest Son said that Husband's visits to America decreased after he married his second wife.

### D.    Husband's Testimony[6]

Husband testified that he had lived in Jordan since his mother had passed away. Husband said that his father had purchased the Jordan home so that Husband could live there with his family when he was in Jordan. Husband stated that although the Jordan home where he was living was owned by his father, Husband's brother was listed as the actual owner. Husband also acknowledged that the two apartments on the Jordan property were his brother's. Husband claimed that he did not own "anything back home" in Jordan. When asked about the $50,000 that was sent to Jordan before the family moved there in 2004, he said that he and Wife did not send any money to purchase the Jordan home and that he had sent the money ahead so

---

[6]Husband testified through an interpreter.

7

that Wife and his children could use it for expenses, including private-school tuition for the children.

Husband said that he had remained in Jordan for the ten years following his mother's death partly due to the COVID-19 traveling restrictions and partly because Wife did not want him in America. Husband also claimed that he was not married to anyone in Jordan. However, Husband later agreed that a Jordanian document stated that he had a wife (Deebah Muqbal) there, but he claimed that she was his nurse. Husband attempted to explain the situation, saying that he had hired a nurse to help with his mother when he took her back to Jordan in 2014. After Husband had gastric-bypass surgery, he kept the same nurse.[7] To get around the cultural prohibition against living with someone of the opposite sex to whom he was not married, Husband went to the Jordan government, and they guided him in writing a document stating that the nurse was his wife. Husband said that he intended her to be his nurse only. But Husband admitted that his "nurse's" son and mother had been living with him in Jordan for the ten years preceding the trial. Husband disagreed that his second wife/nurse would inherit from him.

---

[7]Husband was asked why he was not able to take care of himself after he had lost weight from the gastric-bypass surgery, and he said that he had balance issues and could not see well. He stated that he could not have hired a male nurse to take care of his needs and that he needed a female nurse to live with him because he could not cook or wash clothes. But Husband admitted that during the seven months preceding the trial when he had been in the United States, a nurse had not been living with him.

Husband said that he had taken out a loan on the 210 residence but denied using the funds to purchase another property. Husband said that he had not paid off the loan.

With regard to the Palestine property, which Husband admitted he had owned, Husband testified that he had sold it and had spent the proceeds on his children, but he could not recall what he had bought for them. He later said that the proceeds were with Wife.

Husband said that he had paid for his living expenses from the $125,000 that he had made when he sold the 2.5-acre Arlington property, which he called "his land." Husband admitted that he had used some of the proceeds to purchase cars in America that he had shipped to Jordan and then sold. He testified that he had no money left from the sale of the 2.5-acre Arlington property.

Husband said that he had supported Wife during the prior ten years through the rent on the 208 and 210 residences, his Social Security checks, and the cash (which totaled $15,000 to $30,000) and gold (which he valued at $50,000) that he had left in a safety-deposit box. Husband believed that this financial support was sufficient to provide for his family. Husband was asked if he had given Wife money during the years that he was stuck in Jordan due to the COVID-19 traveling restrictions, and he answered, "She has all the money." He said that his Social Security checks (i.e., $1,370.20 per month beginning in May 2022) were deposited in "Bank of America

9

with [Wife]." Further questioning showed that he had transferred $620 to $650, or approximately half, of his Social Security checks to Wife on several occasions in 2021.

Husband testified that he did not want a divorce.[8] Nevertheless, Husband asked to be awarded half of the gold, a car, the 210 residence, and furniture. He also asked for spousal support.

## E. Outcome

The trial court ultimately signed a final decree dissolving the marriage on the grounds of insupportability, adultery, and abandonment. The trial court awarded Wife, among other things, the 210 residence; all household furniture, clothing, and jewelry in her possession or subject to her sole control; all sums of cash in her possession or subject to her sole control; and a judgment for $62,500 payable by Husband. The trial court awarded Husband all household furniture, clothing, and jewelry in his possession or subject to his sole control and all sums of cash in his possession or subject to his sole control. The trial court ordered Wife to pay the remaining amount of the promissory note ($35,356.33) related to the 210 residence and ordered Husband to pay $62,500 to Wife. With regard to the payment to be made to Wife, the decree stated that Husband had taken

> possession of $125,000.00 from the sale of community property located in Arlington, Texas. The [c]ourt further [found] that those proceeds should have been shared between both parties. Therefore, the [c]ourt ORDER[ED Husband] to reconstitute the marital estate [for] the full

---

[8]Husband, however, filed a counterpetition for divorce approximately three months after Wife had filed for divorce.

value of the sales proceeds and [to] pay to [Wife] the sum of $62,500.00 as her portion of this community asset. [The court] FURTHER[] ORDERED that said payment . . . be made to [Wife] by paying $2,000.00 per month beginning July 1, 2023, and continuing on the first day of each month thereafter until the amount is paid in full.

Pursuant to Husband's timely request, the trial court made findings of fact and conclusions of law; they were signed approximately six weeks after the final decree.[9] Husband also filed a motion for new trial, which was overruled by operation of law, and perfected this appeal.

### III. Challenges to Just-and-Right Division

Husband raises a variety of issues challenging the trial court's property division. We set forth the standard of review and the law applicable to property divisions and then address his dispositive arguments.

### A. Standards of Review and Applicable Law

We have previously set forth the standard of review that we apply when analyzing a trial court's property division:

> In dividing a marital estate, the trial court is to do so in a manner that it deems "just and right, having due regard for the rights of each party." Tex. Fam. Code Ann. § 7.001. We review the trial court's property division for an abuse of discretion[] and presume that it exercised its discretion properly. *See Murff v. Murff*, 615 S.W.2d 696, 698–99 (Tex.

---

[9]As will be discussed in more detail below, although the trial court made findings of fact and conclusions of law, there are gaping holes, especially regarding the valuation of the community estate and the parties' separate property, leaving this court and the parties at a loss as to the reasoning behind the property division. *See Venture Cotton Coop. v. Freeman*, 435 S.W.3d 222, 226 & n.4 (Tex. 2014) (noting that although findings of fact and conclusions of law were requested and filed, they "shed no light on the court's reasoning").

1981).   A trial court abuses its discretion if the division is manifestly unfair.  *Mann v. Mann*, 607 S.W.2d 243, 245 (Tex. 1980).

> Although the trial court is not required to divide the marital estate equally, its division must be equitable and supported by a reasonable basis in the record. . . .   To the extent [appellant] argues that the evidence does not support the trial court's property division, we are still guided by the abuse-of-discretion standard but consider the evidentiary support (or lack thereof) as a factor relevant to our assessment of the trial court's exercise of discretion.

*Touponse v. Touponse*, No. 02-20-00285-CV, 2021 WL 2753504, at *3 (Tex. App.—Fort Worth July 1, 2021, no pet.) (mem. op.); *see also Mincer v. Summers*, No. 02-21-00150-CV, 2022 WL 1573715, at *9 (Tex. App.—Fort Worth May 19, 2022, pet. denied) (mem. op.).   A trial court also abuses its discretion by ruling without supporting evidence.  *Ford Motor Co. v. Garcia*, 363 S.W.3d 573, 578 (Tex. 2012).

A trial court's property-division-related findings of fact have the same force and dignity as a jury's answers to jury questions.  *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991).   As with jury findings, a trial court's fact-findings on disputed issues are not conclusive, and when the appellate record contains a reporter's record, an appellant may challenge those findings for evidentiary sufficiency.  *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *Super Ventures, Inc. v. Chaudhry*, 501 S.W.3d 121, 126 (Tex. App.—Fort Worth 2016, no pet.).   We review the sufficiency of the evidence supporting challenged findings using the same standards that we apply to jury findings.  *Catalina*, 881 S.W.2d at 297.   We defer to the trial court's findings of fact—so long as they are supported by the record—and review conclusions of law

de novo. *Sw. Elec. Power Co. v. Lynch*, 595 S.W.3d 678, 683 (Tex. 2020). Furthermore, when findings of fact and conclusions of law differ from a judgment and there is no objection to the findings, the findings of fact and conclusions of law *filed after the judgment* are controlling if there is any conflict with the judgment. *Hizar v. Heflin*, 672 S.W.3d 774, 801 n.15 (Tex. App.—Dallas 2023, pet. denied); *Sw. Craft Ctr. v. Heilner*, 670 S.W.2d 651, 655 (Tex. App.—San Antonio 1984, writ ref'd n.r.e.).

### B.    Waste, Fraud, and Reimbursement

In his brief, Husband argues his fifth and seventh issues together, contending that an unequal distribution of the community estate and money judgment to Wife for $62,500 on the basis of fraud, waste, or reimbursement is not supported by the pleadings or the evidence. Husband bases his fraud and waste argument on the fact that (1) Wife's original petition for divorce did not allege fraud on the community or waste or request that the community estate be reconstituted in determining the property division and (2) the trial court granted his motion to strike Wife's first amended petition, which did plead waste and actual and constructive fraud and requested the trial court to reconstitute the community estate. Husband argues that the trial court made no separate-property finding that would support a reimbursement claim. As explained below, we agree with Husband.

#### 1.    Applicable Law

Claims for waste, fraudulent transfer of community property, or other damage to community property belong to the community itself and must be considered in the

13

trial court's property division. *Chu v. Chong Hui Hong*, 249 S.W.3d 441, 444–45 (Tex. 2008). Constructive fraud, or waste, may be shown when one spouse unfairly deprives the other of the benefit of community property. *Matter of Marriage of Vedullapalli & Velagandula*, No. 05-22-01248-CV, 2024 WL 3218215, at *3 (Tex. App.—Dallas June 28, 2024, pet. filed) (mem. op.). Such a claim provides a basis for the trial court to reconstitute the marital estate by adding the amount unfairly dissipated and then awarding a disproportionate amount to the innocent spouse. *See id.*; *Sharma v. Jani*, No. 02-23-00045-CV, 2024 WL 2066363, at *11 (Tex. App.—Fort Worth May 9, 2024, no pet.) (mem. op.) (stating that upon determining that a spouse has committed fraud on the community, the trial court must reconstitute the estate before making its just-and-right division).

In contrast to fraud or waste, if one spouse improves his or her separate property with community funds, then the other spouse is entitled to reimbursement to the community estate out of the separate, improved estate. *Teneyck v. Teneyck*, No. 02-22-00437-CV, 2023 WL 5615873, at *8 (Tex. App.—Fort Worth Aug. 31, 2023, no pet.) (mem. op.). "The party claiming the right of reimbursement has the burden of pleading and proving that the expenditures and improvements were made and that they are reimbursable." *Day v. Day*, No. 04-23-00476-CV, 2024 WL 3056665, at *6 (Tex. App.—San Antonio June 20, 2024, pet. filed) (mem. op.) (quoting *Vallone v. Vallone*, 644 S.W.2d 455, 459 (Tex. 1982)); *see* Tex. Fam. Code Ann. § 3.402(b). However, a court may not recognize a marital estate's claim for reimbursement for the

14

living expenses of a spouse. Tex. Fam. Code Ann. § 3.409(2); *McCoy v. McCoy*, No. 02-15-00208-CV, 2016 WL 3659122, at *3 (Tex. App.—Fort Worth July 7, 2016, no pet.) (mem. op.).

From a procedural standpoint, it is axiomatic that "a judgment must be supported by the pleadings. . . . Thus, a party may not be granted relief in the absence of pleadings to support that relief." *Cunningham v. Parkdale Bank*, 660 S.W.2d 810, 813 (Tex. 1983); *see* Tex. R. Civ. P. 301. The purpose of pleadings is to give an adversary notice of claims and defenses, as well as notice of the relief sought. *Perez v. Briercroft Serv. Corp.*, 809 S.W.2d 216, 218 (Tex. 1991); *McKee v. McKee*, No. 2-06-436-CV, 2008 WL 110112, at *2 (Tex. App.—Fort Worth Jan. 10, 2008, no pet.) (mem. op.).

### 2. Analysis

The record reveals that there is no pleading alleging a claim for fraud or waste to support the findings of fact[10] or the portions of the final decree ordering

---

[10]The trial court made the following findings regarding fraud on the community and reconstituting the estate:

**Division of the Marital Estate – Fraud on the Community**

9. [Husband] improperly dissipated community[-]property assets valued at approximately $125,000.00 without [Wife's] knowledge or consent.

10. The value of the reconstituted estate is $62,500.00.

Because we are remanding this case, we note that finding of fact 10 does not represent the value of the reconstituted estate because the amount of the reconstituted estate is the total value of the community estate that would have existed but for the fraud. *See* Tex. Fam. Code Ann. § 7.009(a), (b). Moreover, the final decree does not set forth

reconstitution of the marital estate. The original petition, which was the live pleading at the time of the divorce trial due to the trial court's striking Wife's first amended petition, pleaded only for reimbursement. We conclude that to the extent the trial court ordered the marital estate to be reconstituted based on fraud or waste, such issues were not pleaded[11] and cannot support the judgment.

In an effort that is unavailing, Wife's brief relies solely on her reimbursement claim to uphold the $62,500 judgment:

> In Husband's fifth issue, [he] claims that Wife's pleadings do not support an unequal distribution based on fraud, waste, or reimbursement. In Wife's live pleading, her *Original Petition for Divorce*, she requested a disproportionate share of the parties' estate as well as reimbursement to the community.
>
> In the [c]ourt's findings of fact and conclusions of law, the [c]ourt found that as a just[-]and[-]right division of the assets and liabilities, Wife should be granted a reimbursement claim in the amount of $62,500.00. The money judgment was not part of the [c]ourt's findings related to fraud or reconstitution of the marital estate. Further, the award of the marital residence was not awarded due to fraud[] but as a just[-]and[-]right division of the marital estate. Therefore, even if the [c]ourt erred in finding that Husband [had] committed fraud on the community, it was harmless error[] because no division of property was ordered in conjunction with this finding. The [c]ourt found sufficient evidence to

---

the values of any of the parties' assets; thus, it is unclear what amount should be added to the $62,500 to produce the value of the reconstituted estate.

[11]Additionally, Wife does not argue that claims for fraud or waste were tried by consent. *See In re J.R.*, No. 02-23-00071-CV, 2024 WL 191211, at *6 (Tex. App.—Fort Worth Jan. 18, 2024, pet. denied) (mem. op.) ("[T]rial by consent is a doctrine that is only intended to cover the exceptional case in which it clearly appears from the record as a whole that the parties tried the unplead[ed] issue.").

divide the property as ordered through reimbursement and a just[-]and[-]right division.  [Record references omitted.]

Wife's circular justifications fail for a variety of reasons—the crux of which is that any reimbursement award cannot stand because there is no evidence (and also no finding) that Husband owned any separate property that was allegedly improved with community funds.[12]

As Husband noted in his brief,

[t]he trial court did not identify any separate property of either party. The trial court did not address Wife's reimbursement claim mentioned at trial in the Final Decree of Divorce and did not order Husband to reimburse Wife for improvements [that] she [had] made on a property [that] was awarded to Husband.

---

[12]The trial court made a separate finding of fact related to Wife's reimbursement claims:  "The community estate paid $51,000.00 toward the debt, liability, or expense of the separate estate of [Husband]."  This finding leaves us in the dark because the trial court did not resolve the factual question on the character of the property and specifically did not identify Husband's separate property on which the amount was spent and because, if we assume that it is related to the Jordan home, there is no evidentiary support for the finding (Wife testified that $40,000 to $50,000 was wired for the Jordan property) or for the implied conclusion that the Jordan home was Husband's separate property.  Wife and one of the Mohammeds' sons testified that the community had paid the entire purchase price before they had moved to Jordan, and Husband testified that he had no ownership interest whatsoever.  *See S.T. v. H.K.*, Nos. 02-21-00408-CV, 02-21-00420-CV, 02-22-00010-CV, 2023 WL 2607751, at *12–14 (Tex. App.—Fort Worth Mar. 23, 2023, pet. denied) (mem. op.) (explaining that property acquired with community and separate funds is held as a tenancy in common).  Furthermore, the trial court did not make a conclusion of law based on this $51,000 reimbursement finding and made no reimbursement orders in the final decree.  Because we are remanding for a new trial on the property division, the trial court will have another opportunity to take a look at this.

17

Wife's first justification in the paragraph from her brief that is quoted above—that the trial court made both a finding of fact and a conclusion of law that she should be granted a reimbursement claim in the amount of $62,500—is simply not true. The only reimbursement finding of fact is (as set forth in footnote 12) related to an unsubstantiated $51,000 amount that was allegedly spent on Husband's unidentified separate estate. The trial court made a conclusion of law—that "[a]s part of a just[-] and[-]right division of the assets and liabilities of the marriage, [Wife] is awarded a claim for reimbursement in the amount of $62,500.00"—but this conclusion has no supporting finding of fact. As noted above, we review conclusions of law de novo; thus, this conclusion is erroneous because it is not supported by an underlying finding of fact.

Wife's second justification—that the money judgment was not part of the trial court's findings related to fraud or reconstitution of the marital estate—is technically true as the findings of fact relating to the $62,500 did not mention a money judgment. But Wife's justification splits hairs because the only findings of fact that reference $62,500—the very amount of the money judgment in the decree—were based on fraud on the community and gave that amount (though incorrect) as the value of the reconstituted estate.[13] Wife never tells us what source exists in the findings that underlies the judgment other than the unpleaded fraud claim.

---

[13]Moreover, Wife's claim for reimbursement was not based on how Husband had used the proceeds from the sale of the Arlington property. Wife testified at trial

18

Wife's final justification—that even if the trial court erred by finding that Husband had committed fraud on the community, the alleged error was harmless because no division of property was ordered in conjunction with this finding—also splits hairs because the trial court's division of the marital estate appears to turn on the unsupported reimbursement conclusion. As part of a just-and-right property division, the trial court may consider a spouse's dissipation of the estate. *See Smith v. Smith*, No. 02-20-00370-CV, 2022 WL 1682427, at *3 (Tex. App.—Fort Worth May 26, 2022, no pet.) (mem. op.). We were not privy to how the trial court balanced the various factors in dividing the estate, but the trial court's final decree contains a section with the heading "**Division of Debt**" under which it sets forth "**Debts to [Husband]**," orders reconstitution of the estate, and orders Husband to pay Wife $62,500. Thus, we disagree with Wife's conclusion that any finding of fraud on the community was harmless error. We conclude that the $62,500 judgment cannot be treated as a reimbursement claim because there is no finding of fact or recitation in the decree relating to a reimbursement of $62,500. Further, because of the impossibility of the finding that the reconstituted estate has a value of $62,500, neither

that her reimbursement claim related to the loan that was taken out on the 210 residence, and her first amended inventory that was admitted into evidence at trial included a community claim for reimbursement for the $82,400 loan taken out against that residence, as well as a claim for reimbursement for $40,000 for the purchase of the home in Jordan. Furthermore, Husband testified that he had used the $125,000 proceeds for his living expenses, which cannot form the basis of a reimbursement claim. *See* Tex. Fam. Code Ann. § 3.409(2).

19

the decree nor the findings reveal that the value of the estate being divided actually was divided or that the trial court had reached a determination of its value.

Because Wife's live trial pleading did not plead fraud or waste, the portions of the final decree referencing reconstituting the estate and ordering Husband to pay Wife $62,500 cannot stand. Accordingly, we sustain Husband's fifth and seventh issues and must remand for a new trial on the composition of the marital estate and for a new just-and-right division of the marital estate. *See Clarke v. Clarke*, No. 08-23-00016-CV, 2024 WL 347938, at *10 (Tex. App.—El Paso Jan. 30, 2024, no pet.) (mem. op.) (reversing final decree as to two fraud awards and remanding for a new division of property); *Matter of Marriage of Wells*, No. 12-21-00152-CV, 2022 WL 3724724, at *1, *11–12 (Tex. App.—Tyler Aug. 30, 2022, no pet.) (mem. op.) (reversing for a new trial on the property division and related claims). *See generally Jacobs v. Jacobs*, 687 S.W.2d 731, 733 (Tex. 1985) (stating that we cannot simply modify the decree by striking awards because to do so would be to make a new division of the estate and that if "reversible error affecting the 'just and right' division of the community estate is found, the court of appeals must remand the entire community estate for a new division").[14]

---

[14]Based on our disposition of Husband's fifth and seventh issues, which require a new trial on the property division, we need not address Husband's first and second issues challenging the trial court's denial of the parties' joint motion for continuance that was sought to acquire foreign documents related to the Jordan home and arguing that the trial court's property division was not just and right because it awarded 100%

## C. Adultery and Abandonment Findings[15]

In his third and fourth issues, Husband argues that the property division is not just and right because there is "not adequate evidence" of adultery or abandonment to support the trial court's findings. *See* Tex. Fam. Code Ann. § 6.003 (stating that the trial court may grant a divorce in favor of one spouse if the other spouse has committed adultery), § 6.005 (stating that the trial court may grant a divorce in favor of one spouse if the other spouse left the complaining spouse with the intention of abandonment and remained away for at least one year). Although the parties gave conflicting testimony, the trial court was permitted to believe Wife's testimony and to disbelieve Husband's testimony. *See Hamilton v. Hamilton*, No. 02-19-00211-CV, 2020 WL 6498528, at *4 (Tex. App.—Fort Worth Nov. 5, 2020, no pet.) (mem. op.); *see also Mincer*, 2022 WL 1573715, at *10.

Here, Wife testified that when she called husband on October 31, 2014, to touch base with him in Jordan, he told her that he was in the midst of his wedding party. Oldest Son testified that when he went to Jordan for his grandmother's funeral, Husband introduced a woman as his fiancée, and after they were married, Husband asked Oldest Son to make sure that his second wife was taken care of upon

---

of the community property and a money judgment to Wife but did not divide the Jordan property. *See* Tex. R. App. P. 47.1.

[15]Although we have already determined that there is error in the property division necessitating a remand, we address Husband's challenges to the adultery and abandonment findings because they were among the bases for granting the divorce.

Husband's passing. Son testified that during a visit to Jordan, Husband had introduced his second wife to him as his wife, and Son noted that she had slept in the same bedroom with Husband with the door locked. Son (as well as Oldest Daughter) also testified about Husband's Viagra prescription. *See, e.g.*, *Riojas v. Riojas*, No. 01-20-00753-CV, 2021 WL 4202157, at *1–2 (Tex. App.—Houston [1st Dist.] Sept. 16, 2021, no pet.) (mem. op.) (noting that wife filed a counterpetition for divorce on adultery grounds, believing that husband was having affairs because his remaining Viagra pills did not match the number of times that they had sex); *cf. Gerges v. Gerges*, 601 S.W.3d 46, 65 (Tex. App.—El Paso 2020, no pet.) ("[G]iven that [h]usband admittedly fathered a child with another woman during the course of his marriage to [w]ife, it 'reasonably follows' that he had sexual relations with that woman[] and that he therefore committed adultery."). The trial court was free to believe these witnesses' testimony over Husband's story that he had signed a document stating that his nurse was his wife only for the purpose of allowing her to live with him.[16]

Additionally, the trial court had before it evidence that Husband had been in the United States for only about eighteen months during the ten years that preceded the divorce trial. Although Husband blamed COVID-19 travel restrictions for part of his absence, that did not explain why he was not present more during the time from

---

[16]Husband claims that if adultery occurred, Wife knew of the adultery for over ten years and did nothing to end the marriage. Husband, however, cites no authority for his implied contention that laches applies to an adultery claim, and we have found none. *See generally* Tex. R. App. P. 38.1(i).

2014 through 2019, which preceded the COVID-19 pandemic and its related travel restrictions.

We conclude that there is more than a scintilla of evidence to support the trial court's findings on adultery and abandonment that were alleged as grounds for the divorce. *See* Tex. Fam. Code Ann. §§ 6.003, 6.005.[17]

Accordingly, we overrule Husband's third and fourth issues.

## IV.  Challenge to Money Judgment

In his eighth issue, Husband argues that the trial court erred by awarding a judgment for $62,500 and by ordering him to pay that judgment at a rate per month that exceeds his monthly income.  Because we have sustained Husband's challenges to the decree's provisions ordering reconstitution of the estate and ordering him to pay Wife $62,500 due to Wife's failure to plead a fraud or a waste claim that would support an order reconstituting the estate, we also sustain Husband's eighth issue as a money judgment that is related to unpleaded claims cannot be upheld.

## V.  Conclusion

We affirm the divorce, but having sustained Husband's dispositive fifth, seventh, and eighth issues regarding the final decree's reconstitution provisions and

---

[17]Also within his third issue, Husband argues that an unequal distribution of the community estate on the basis of adultery is punitive.  Husband claims that the only factor that the trial court considered in its property division was the fault factor and that a majority of the factors would entitle him to a disproportionate share of the community estate.  Because we are remanding for a new trial that includes a new just-and-right property division, we need not address this portion of Husband's third issue. *See* Tex. R. App. P. 47.1.

related money judgment, we reverse the trial court's division of the community estate, and we remand this case to the trial court for a new trial on the composition of the marital estate and to make a just-and-right property division consistent with this opinion.

/s/ Dabney Bassel

Dabney Bassel
Justice

Delivered:  October 10, 2024

24